## STATE v. CLYDE P. MONTGOMERY.

(Filed 29 March, 1922.)

**1. Appeal and Error—Objections and Exceptions—Brief.**

Exceptions not insisted upon in the appellant's brief are deemed abandoned in the Supreme Court under the rule.

**2. Criminal Law—Rape—Evidence.**

Where the 8-year-old sister of the prosecuting witness in an action for rape has testified that she witnessed the act, it is competent for her to testify that she was then "too scared" to call out and alarm the neighborhood, as an explanation of her failure to give the alarm, its weight to be determined by the jury.

**3. Same—Involuntary Exclamations—Physical Suffering—Corroborative Evidence.**

Where the prosecuting witness has testified, in an action for rape, as to her physical suffering afterwards, as the result of the defendant's act, it is not error to admit the testimony of the mother that the prosecutrix soon afterwards complained of physical and nervous suffering, when the trial judge confined this evidence to the purpose of corroboration in his instructions; further, such involuntary expressions, under the circumstances, are admissible as substantive evidence.

**4. Appeal and Error—Objections and Exceptions—Instructions—Contentions.**

Exceptions to the statement by the trial judge of the contentions of the parties, in his charge to the jury, taken for the first time in the case on appeal, does not afford the judge trying the case an opportunity to correct error therein, if any committed, and will not be considered.

**5. Criminal Law—Rape—Evidence—Corroboration—Instructions—"Persuade"—Words and Phrases.**

Where the defendant, tried for rape, has taken the stand in his own behalf, and introduced witnesses to corroborate his statements by what he has told them after the act charged, and the judge, in his charge, has limited this testimony for the purpose of corroboration, it is not error for him to say that, the evidence being admitted for that purpose, it was for the jury to say how far it would "persuade" them to believe the defendant's testimony on the subject, the word "persuade" being also defined as "cause them to believe."

**6. Criminal Law — Rape — Instructions—Appeal and Error—Harmless Error.**

Where, in an action for rape, the trial judge has charged the jury that the witness, having taken the stand, may prove his good character as substantive evidence to be considered by them as tending, along with the other evidence, to show his innocence, his further charge that the defendant's good character "would cut no figure" if the jury found upon the evidence, after considering his good character and giving him the full benefit of it, that he was guilty beyond a reasonable doubt, is not reversible error, when it appears from the charge, considered as a whole, that the defendant received the full benefit of all evidence of this kind.

**7. Jurors—Qualification—Courts—Findings of Fact—Appeal and Error—Rape.**

Where defendant, tried for rape, excepted to the refusal of the judge to set aside the verdict of guilty because one of the jurors had expressed an opinion of the defendant's guilt, the finding of the trial judge as a fact that he had taken part in arguments, in his presence, on the subject of capital punishment, but had not expressed or formed any opinion as to defendant's guilt, but had only said that if the defendant were guilty he should be hung; and that the juror was qualified to hear the evidence and reach his conclusion thereon fairly and impartially, sustains his action on appeal in refusing the defendant's motion.

**8. Same—Court's Discretion.**

*Held,* on this appeal, the question of the qualification of a jury to sit upon the trial would have been a matter largely resting in the sound discretion of the trial judge, on appellant's motion to set aside the verdict for the juror's former expression of bias against him, had the judge found the facts somewhat differently upon the question of the juror's impartiality.

APPEAL by defendant from *Bond, J.,* at January Term, 1922, of NEW HANOVER.

The defendant was indicted for rape committed upon the person of Ruby Smith, and convicted, and from the judgment upon such conviction appealed to this Court.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. C. King, W. F. Jones, and Herbert McClammy for defendant.*

WALKER, J. The State's evidence, if believed, was amply sufficient to establish all the essential elements of the crime.

The defendant's counsel, in their brief, do not insist upon their exceptions 1 and 2, and so they have abandoned them, under our rule. But there is no merit in them.

Exception 3 was to testimony by Maude Smith, eight-year-old sister of the prosecuting witness, Ruby Smith, that "she was too scared when she witnessed the act of defendant upon her sister to call out and alarm the neighborhood." The witness was clearly entitled to give this explanation of her failure to give the alarm, its weight to be determined by the jury.

Exception 4 was to admission of testimony by the mother of Ruby Smith, that Ruby, soon after the occurrence, complained of physical and nervous suffering. Ruby Smith, however, had previously been on the stand, and had herself testified to this suffering, and the judge told the jury that they were to consider the evidence from the mother only in so far as it tended to corroborate the statement of the girl made here, and for no other purpose. This ruling was more favorable to the defendant than he was entitled to have it. Involuntary expressions as to existing suffering are admissible in themselves when physical condition is a material question in the investigation. This was made material here by the nature of the offense.

Exceptions 5, 6, 7, 8 were all to similar evidence, which was plainly admissible. The same observation may be made to exception 9.

Exception 13 was to a part of the judge's charge in which he was stating one of the contentions of this defendant. Whether or not he stated this contention correctly, does not appear from the record. If it was stated incorrectly, the defendant's counsel should have called the court's attention at the time to its incorrectness, if they deemed it incorrect. To take such an exception after the charge is delivered, and in the case on appeal, is contrary to the rule, and numerous decisions of the Court.

Exception 14 was to the following part of the charge, especially that in brackets: "In earlier part of the trial, gentlemen, I called your attention to this fact that in order to corroborate a witness the law

allows another witness to testify that on prior occasions that he had made the same statement that he made here as a witness on the stand, and it allows the jury to consider it, not as substantive evidence, but as corroborative evidence; that is, for this purpose: [How far does it persuade the jury to believe as true the statement made by the witness on the stand, by reason of the fact that the witness has made the same statement about the same occurrence on other occasions, if the jury find that the witness did make the same statement on prior occasions.] They have a right to consider it in that view, simply as assisting them in seeing how far are they persuaded to accept as true the statements made by the witness on the stand. Now, then, as I have said to you, it is not substantive evidence tending to prove the defendant's guilt, it is to be considered only for the purpose of corroboration, as I have outlined to you."

The criticism of the defendant's counsel is directed to the use of the word "persuade." That criticism, however, if just, would, applied as it was to corroborative statements of the prosecuting witness, Ruby Smith, tend to weaken the force of those statements. That is, the jury must be induced to believe those statements before they can give them any weight. However this may be, the jury could not in any sense have been misled by the use of this term, taking the whole charge together. The average juror is not a philologist. He would not stop to consider the exact meaning of a word when its immediate context interpreted it. Besides, the word "persuade" is also defined as "to cause to believe."

Exception 15 was taken to that portion of the judge's charge included in brackets below, as follows: "Now, the defendant contends, as I said to you just now, that he has brought a large number of witnesses here upon the question of his character. The defendant has a right to prove that his character is good if he can when he is being tried for crime, and our courts have all along said that the possession of good character by a man on trial is substantive evidence to be considered by the jury as tending, along with the other evidence, to show his innocence. [The same law says, however, that notwithstanding the evidence as to the defendant's character, if the jury find beyond a reasonable doubt that the defendant is guilty, then the question of his character 'cuts no figure,' that is, if upon consideration of all the evidence in the case the jury say that the guilt of the defendant is proven beyond a reasonable doubt, then the question of his character no longer cuts any figure.] Because it is just as much a crime for a man of good character to violate the law as it is for a man of bad character to violate the law."

It appears that this criticism is also directed to the particular language of the judge. The use of the words "cuts no figure" may have been, as argued, unfortunate, but used as they were, and in the connec-

tion in which they were, the jury could not have misunderstood them. Almost immediately the judge returned to this subject, and said: "The prisoner contends that he has come here and admitted the occurrence all along about the selling of the greens, and things of that sort, until he got to this house, and he says he has a consistently good character, which ought to persuade you that his statement should be accepted as true; that he has brought a large number of witnesses, whom you have heard upon the stand testify as to his character, and that putting all these things together you ought to say that you did have a reasonable doubt as to whether he did anything wrong while in the house or not."

He thus draws the attention of the jury to the very point where evidence of good character would most help or benefit the defendant. Qualified as the words criticised were by their immediate context, "If the jury find beyond a reasonable doubt that the defendant is guilty," then he would be guilty regardless of the evidence as to his character, because it is just as much a crime for a man of good character to violate the law as it is for a man of bad character to violate it, they could bear no meaning to the jury prejudicial to the defendant. His Honor was stating, in his characteristic way, a universal truth, known as well to the jury as to himself.

Exception 16 was addressed to the judge's statement of a contention of the defendant, and the remarks heretofore made under exception 13 are applicable here.

Exception 17 was to the statement of a contention of the State, a perfectly legitimate contention under the circumstances, and so far as the record shows not an inaccurate statement.

Exception 18 was taken to the refusal of the judge to set aside the verdict because of the expression of an opinion by one of the jurors, Ira Scott, before the trial, that the defendant was guilty and should be electrocuted. The judge, however, considered the affidavits sustaining and contradicting this allegation, and found the following facts: "That at various times in the place of business of Ira Scott, who served on the jury, there were allusions made by various and sundry people to the Montgomery case, and there were at times debates or colloquies between various people in said place of business upon the rightfulness or wrongfulness of capital punishment. That at different times the juror, Ira Scott, made some statements in the conversations, but that all that he said was not to express any opinion as to whether or not the defendant Montgomery was or was not guilty, but to give it as his opinion that if it was shown that he was guilty of the crime of rape that he ought to be sent to the electric chair, and that he did no more in these conversations than to argue in favor of the correctness of his own belief in the rightfulness of capital punishment. The court further finds that the juror,

when he was examined by both sides, stated that he had not formed or expressed any opinion as to the guilt of the defendant, and the court further finds such statement to be a fact. The court finds that he stated that he knew of nothing which would prevent his sitting on the jury and giving the prisoner and the State a fair and impartial trial of the cause, and that he went into the jury box unswayed by any impressions and formed no opinion as to the guilt or innocence of the defendant until after he had heard the evidence in the case and the judge's charge and the jury had retired to consider the case."

"In the trial of this case, when the jury was being selected, the court announced that it would regard it a proper ground of challenge as to any particular juror if he stated that he had formed and expressed an opinion either way; that is, that if any juror said that he had formed and expressed the opinion that the prisoner was guilty the defendant's counsel would be allowed to challenge him, but on the other hand, if any juror said that he had formed and expressed the opinion that the prisoner was not guilty the State would be allowed to stand him aside. The court announced that it would pursue that rule unless it led to embarrassment which would cause it to notify both sides that the rule would be rescinded, and that thereafter the court would follow the decisions of the Supreme Court, based upon the statement of the juror, that notwithstanding the opinion formed he could make a fair and impartial juror."

"The court further finds that at the time the juror Scott was examined by the defendant's counsel they had not exhausted their peremptory challenges, and that before the juror took his seat in the box both the State and the defendant were told by the juror, when being questioned, to what extent he participated in the discussions as set out in the affidavit of said juror, and it further finds that the other statements in the affidavit of said Scott, in addition to those already found, are true. Upon the situation, as it was, the defendant did not challenge, or offer to challenge, the said juror. When examined by defendant's counsel, said juror Scott stated he had not formed or expressed the opinion that the prisoner was guilty; that he had not made any such statement; that he had done no more in the conversations alleged to be the foundation for the motion than to argue in favor of capital punishment."

He further finds: "The juror, when he was examined by counsel, stated that he had not formed or expressed any opinion as to the guilt of the defendant, and the court further finds such statement to be a fact. The court further finds that he stated, when called as juror, and on his *voir dire,* that he knew of nothing which would prevent his sitting on the jury and giving the prisoner, and the State, a fair and impartial trial of the cause, and that he went into the jury box uninfluenced by any impressions, and that he formed no opinion as to the guilt or innocence

of the defendant, until after he had heard the evidence in the case and the judge's charge, and the jury had retired to consider the case."

The two principal exceptions in this case are those relating to the proof of the prisoner's character and the one as to the conduct of the juror Ira Scott. As to the reference in the charge to the prisoner's character, and the manner in which it should be considered by the jury, we are clearly of the opinion that the meaning of the judge was so manifest that no intelligent juror could have mistaken it. The jury could not have supposed that the court intended to deprive the prisoner of the benefit of his former good character as a fact to be considered by them in weighing the evidence when the judge plainly meant that if upon all the testimony, including that as to his character, they found him to be guilty beyond a reasonable doubt, they could not acquit merely because he had always borne a good character.

On the other question, the matter would largely have rested in the sound discretion of the court had the judge found the facts, in some respects, differently upon the question of the juror's impartiality, as in the case of *S. v. Terry,* 173 N. C., 761, and the cases therein cited. *S. v. Banner,* 149 N. C., 519; *S. v. English,* 164 N. C., 498; *S. v. Foster,* 172 N. C., 960, and *S. v. Bailey,* 179 N. C., 724. But upon the facts it did not appear that the juror was not qualified.

We have given close and careful consideration to the record and all the exceptions and assignments of error, and have been unable to discover by the most diligent search any ground for a reversal.

No error.