STATE v. DON BARNHILL.

(Filed 14 November, 1923.)

**1. Appeal and Error—Objections and Exceptions—Evidence—Waiver.**

The appellant waives his exception to the exclusion of evidence when he asks another question covering the same ground, and the answer is admitted without further objection.

**2. Same—Criminal Law—Rules of Court—Instructions.**

Exception to the charge of the court not insisted upon in appellant's brief is deemed abandoned under Rules of Practice in the Supreme Court, Rule 27 (185 N. C., 798), but *held* an instruction in this criminal action as to the meaning of "reasonable doubt" was correct. *S. v. Schoolfield*, 184 N. C., 723, cited and applied.

**3. Same—Contentions.**

Appellant must except to the contentions stated by the court in his instructions at the time they were made; otherwise, it will not be considered on appeal.

**4. Evidence—Instructions—Trials—Interested Witnesses—Credibility of Evidence.**

An instruction that the jury should scrutinize the evidence of defendant in a criminal action, and that of his near relations, tending to show an *alibi* at the time he was charged with the commission of the offense, but should they find this evidence is entitled to be believed, they would "have a right" to accept it, and to give it the same weight as they would give the testimony of a disinterested witness, *is held* not erroneous, though the word "duty" to accept it would be in better form.

APPEAL by defendant from *Sinclair, J.*, and a jury, at May Term, 1923, of PENDER.

Criminal action. Don Barnhill was charged with an assault on R. R. Henry with a deadly weapon, about 10 o'clock at night, on 8 January, 1923, near the barber shop of Hayes Tate, in the town of Atkinson.

R. R. Henry testified that as he left the barber shop one of the Russ boys, Barnhill and Woodcock were at the other corner of the store and as he started in that direction Barnhill said, "Damn him, let him come up here and I will fix him." That he did not go closer; that he went in Russ's store and stayed in there about two minutes and went out and started home. As he stepped out of the light into the darkness he was struck across the nose and knocked down, and as he started toward the light he was struck twice in the back of the head with a stick. That he could not see any one in the dark. He was knocked down, struck, about five minutes after Barnhill made the threat. That he had had trouble with Barnhill; about four years previous Barnhill had cut him in four or five places and was tried and convicted. He (Henry) was drinking. That he heard Barnhill make the threat, did not see him. Did not know who hit him.

Carney Russ, witness for the State, testified: "I saw Barnhill .the night Henry was hit, some time after ten o'clock. I saw him before and after he was hit. I saw him about five or ten minutes before he was hit. When I first saw him he was standing in front of the store door. I was standing at the corner of Boney's store with Chancey, Woodcock, Barnhill and Hayes Tate. I saw him about two minutes after he was struck. He came back in the store. I don't know where Barnhill was at the time. I saw him afterwards. He came back there in front of the store and got in a truck. This was Woodcock's truck, I guess. Woodcock was with him. I had a conversation with Barnhill and he said that he 'busted his damn face.' He was talking about Henry. Barnhill then got in the truck and left. This was something like five minutes after Henry told me he had been struck. Barnhill was drinking some. He did not say why he busted his face. I think Barnhill drove the truck away. Woodcock cranked the truck up. Barnhill and Woodcock went off in the truck. At that time I had gone back to the store door. Henry's nose was busted and I think his ear was bleeding. I could not tell how bad he was hurt."

Hayes Tate corroborated the testimony of Henry and Russ in many respects. The above is substantially the testimony of the State.

Don Barnhill, the defendant, testified as follows:

"I went to Atkinson that night with Leslie Woodcock. We went from the home of Bland Wallace, my father-in-law. We went on Leslie Woodcock's truck. He drove it. We got to Atkinson somewhere between seven-thirty and eight o'clock, and we stayed there until close to ten o'clock. I then went home with Leslie Woodcock. We went on the truck. Woodcock drove it back. We got back to Wallace's house at quarter past ten. It was that time when we got in the house. Bland Wallace and his wife and my wife and Leslie Woodcock and Leslie Woodcock's wife were there. At the time I left Atkinson I had. not heard anything about Henry having been assaulted. I did not go back to Atkinson any more that night, but stayed at Wallace's the rest of the night. Leslie Woodcock went back to Atkinson to get a package which he had left. He drove the truck back, and got back from Atkinson a few minutes after eleven o'clock. He was gone about an hour. The distance is about two miles. The truck he was driving was a lumber truck, worm driven with slow speed. The first time I heard that Henry had been struck was when Leslie Woodcock came back that night. I did not strike Henry, and did not make any threats against him. I heard the statement of Hayes Tate that he saw me and Leslie Woodcock and some others standing on the corner; that was about nine-thirty o'clock and before Leslie Woodcock and I went home. Hayes Tate passed the corner where we were standing. The truck was stand-

ing in front of Russ's store where we stopped it when we first came. The truck stood there from the time we came until somewhere near ten o'clock, when we left. I never made any statement to Carney Russ that I had struck Henry or that I had busted his face. I did not call him to the truck to me. I didn't make any statement to him asking him not to give me away, or anything like that." He testified that Leslie Woodcock was his brother-in-law.

Leslie Woodcock testified that he was with Barnhill, and corroborated him that Barnhill did not strike Henry and as to the time they left the store, about ten o'clock, and that it would take about fifteen minutes to go to Wallace's house; that after taking Barnhill to the Wallaces' he went back to the store for a package and then, for the first time, heard Henry had been assaulted. He said that he was Barnhill's brother-in-law.

Mrs. Don Barnhill, wife of the defendant, said that her husband got back at 10:15. Bland Wallace and his wife, Janie Wallace, father and mother-in-law of the defendant, all testified to the same effect.

Several witnesses were introduced and testified to the good character of the witnesses for the State and the defendant.

The State, in rebuttal, examined C. M. Chancey, who corroborated the State's witnesses in many respects, and was asked the following questions on cross-examination:

"Q. You remember who was there? A. I remember seeing them. I don't remember what was said. I remember there was drinking.

"Q. You do remember that just before they went in the store that you and Mr. Russ were standing out there talking? A. Yes, sir, I remember Cornie, but I don't remember the words and I don't remember how many.

"Q. Right when the man was hit, if anybody had come there and said they hit him, wouldn't that have made an impression on your mind?"

To the last question there was objection by the State, which was sustained by the court, and the defendant excepted. This was defendant's first exception and assignment of error. Counsel for defendant then asked the witness:

"Q. Do you think your mind was in such a condition that that would not have made an impression on you? A. I guess not. I have told you all I know about it."

There was other evidence not necessary to set forth for the determination of the case.

The court below gave the contentions of the State and defendant and charged the jury. The jury returned a verdict of guilty. The defendant was sentenced by the court and excepted and appealed to this Court.

The following exceptions were taken to the charge of the court, and defendant assigned as errors:

Second. "Reasonable doubt, gentlemen of the jury, don't mean any doubt. You may have a doubt about a matter and at the same time it would not be what the law calls a reasonable doubt. If a jury could acquit in cases, gentlemen of the jury, simply because you could raise imaginary doubts about it, you would never convict and the law could not be enforced. Therefore, the law says the defendant is entitled to the benefit of the doubt, where the doubt is a reasonable doubt, founded on some substantial reason."

Third. "That he is unable to explain it to you, gentlemen of the jury, because he wasn't there and knows nothing about it, and he relies upon what the law calls an alibi; that he wasn't there and therefore can't explain it, but that he isn't guilty because he wasn't there."

Fourth. "Now the defendant contends, gentlemen of the jury, that not only the State has not satisfied you beyond a reasonable doubt that he struck the blow, but that he has offered you evidence which you ought to believe, beyond a reasonable doubt, that he could not have stricken the blow, because he wasn't there."

Fifth. "The court charges you further that it is a rule of law, which you have sworn to observe, that in conflict of evidence, gentlemen of the jury, it is your duty to scrutinize closely the evidence of every defendant in a criminal case before you accept it."

Sixth. "And the law says the close relations have that same temptation. Therefore, it is your duty to scrutinize their evidence before you accept it. But the law says that after having scrutinized their evidence, applied your common sense and reason to it, observed the demeanor of the witnesses on the stand, and considered their interest in the result of the trial, if you find that the evidence is entitled to be believed, that you have a right to accept it and give it the same weight you would that of any disinterested witness."

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Weeks & Cox and C. E. McCullen for defendant.*

CLARKSON, J. The witness Chancey was asked, "Right when the man was hit, if anybody had come there and said they hit him, wouldn't that have made an impression on your mind?" The State objected to this question; the court sustained the objection and defendant excepted, and this was the first assignment of error. We think the defendant's exception cannot be sustained; if the court was in error the defendant waived it by the question immediately being put in another form and

29—186

answered without objection: "Do you think your mind was in such a condition that that would not have made an impression on you? A. I guess not. I have told you all I know about it."

The second exception to the charge, on reasonable doubt, was not insisted upon in the brief and, as a rule, will not be considered on appeal. Rules of Practice in the Supreme Court, Rule 27, "Briefs," 185 N. C., 798.

The court made no error in defining "reasonable doubt." This has been done in a recent case, *S. v. Schoolfield,* 184 N. C., 723, where *Stacy, J.,* said: "A reasonable doubt is not a vain, imaginary, or fanciful doubt, but it is a sane, rational doubt. When it is said that the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, it is meant that they must be 'fully satisfied' (*S. v. Sears,* 61 N. C., 146), or 'entirely convinced' (*S. v. Parker,* 61 N. C., 473), or 'satisfied to a moral certainty' (*S. v. Wilcox,* 132 N. C., 1137) of the truth of the charge, *S. v. Charles,* 161 N. C., 287. If after considering, comparing, and weighing all the evidence the minds of the jurors are left in such condition that they cannot say they have an abiding faith, to a moral certainty, in the defendant's guilt, then they have a reasonable doubt; otherwise not. *Commonwealth v. Webster,* 5 Cushing (Mass.), 295; 52 Am. Dec., 730; 12 Cyc., 625; 16 C. J., 988; 4 Words and Phrases, 155."

Exceptions three and four were to recitals of the court below in regard to the contentions. If the recitals of the court were incorrect as to the facts of the case, it was the duty of the defendant to call the court's attention to it, so that the correction could be made then and there. If this was not done at the time, the defendant cannot complain and wait and except when the case is made up on appeal. The rule is stated in *S. v. Baldwin,* 184 N. C., 791, as follows: "We have so often said that the statement of contentions must, if deemed objectionable, be excepted to promptly, or in due and proper time, so that, if erroneously stated, they may be corrected by the court. If this is not done, any objection in that respect will be considered as waived. We refer to a few of the most recent decisions upon this question: *S. v. Kincaid,* 183 N. C., 709; *S. v. Montgomery,* 183 N. C., 747; *S. v. Winder,* 183 N. C., 777; *S. v. Sheffield,* 183 N. C., 783." See *S. v. Williams,* 185 N. C., 666.

Exceptions five and six are to the rule, as stated by the court, to the scrutiny to be given the testimony of the defendant and his relatives. It will be noted from the evidence to establish an alibi that there was only about fifteen minutes difference as to the time the prosecutor, Henry, was struck in front of Hayes Tate's barber shop and the time that the defendant's relatives testified that he was at Bland Wallace's,

his father-in-law's, home, some two miles from Tate's shop. To corroborate the defendant was his wife and relatives, father and mother-in-law, Bland Wallace and Janie Wallace, and his brother-in-law, Leslie Woodcock. The charge of the court was, in substance, the rule laid down by this Court. The court below laid down the *crucial rule,* "If you find that the evidence is entitled to be believed, *you have a right to accept it and give it the same weight you would that of any disinterested witness.*" The use of the word "duty" would not be amiss, but the nonuse is not error. The above rule has been frequently upheld by this Court.

In *S. v. Williams,* 185 N. C., 666, the following was approved: "Exception 33: In this exception defendants complain for that the court did not go far enough and sufficiently qualify the charge given. This is exactly what the court did do, for, after telling the jury that they should receive the testimony of the defendants and their relatives with caution and scrutiny, the judge used this language: 'If, after such scrutiny, you are satisfied they are telling the truth, it will then be your duty to give it as much credit as you give the testimony of a disinterested witness.' "

In *S. v. Lovelace,* 178 N. C., 769, it is said: "The charge requiring the jury to consider the interest of the defendant and other witnesses, but if satisfied they had told the truth they could give their evidence as much weight as the evidence of other witnesses, is in accordance with our precedents and not prejudicial to the prisoner."

In *S. v. Lance,* 166 N. C., 413, it is said: "As to the instructions as to the testimony of the prisoner himself and of his relatives, testifying in his behalf, cannot be sustained, as the charge was in accordance with *S. v. Fogleman,* 164 N. C., 461; *S. v. Byers,* 100 N. C., 512, and cases cited. The court told the jury that, notwithstanding the personal interest of the defendant and of his relatives, the jury could consider their testimony, and if the jury 'believed them to be credible witnesses, they should give to their testimony the same weight as that of other witnesses.' " See *S. v. Boon,* 82 N. C., 637; *S. v. Holloway,* 117 N. C., 730; *S. v. Collins,* 118 N. C., 1204; *S. v. Lee,* 121 N. C., 546; *S. v. Apple,* 121 N. C., 585; *S. v. McDowell,* 129 N. C., 532; *S. v. Graham,* 133 N. C., 652.

The charge as a whole, as appears from the record, was fair and impartial.

After a careful review of the record, and argument and briefs of the defendant's counsel, we can find

No error.