## STATE v. WILLARD TURNER.

### (Filed 21 September, 1960.)

**1. Criminal Law § 99—**
Defendant's exculpating testimony can not justify nonsuit, since the credibility of defendant's witnesses is for the determination of the jury.

**2. Intoxicating Liquor § 13c— Evidence of constructive possession of intoxicating liquor held sufficient to be submitted to the jury.**
Evidence tending to show that some 18 gallons of nontaxpaid liquor was found in defendant's home is sufficient to be submitted to the jury on a charge of unlawful possession of illicit liquor for the purpose of sale, G.S. 18-50, notwithstanding the testimony of defendant that he had no knowledge that the whiskey was in his home and that it was not there when he left home some several hours prior to the search, and the testimony of defendant's brother-in-law, who had been living in defendant's home for some several weeks, that the whiskey belonged to him, the credibility of the exculpating evidence being for the jury and there being no evidence that the brother-in-law had or attempted to exercise any right of control over any portion of the premises.

**3. Criminal Law § 111—**
A defendant is an interested witness as a matter of law in testifying in his own behalf, and the court may properly instruct the jury to scrutinize his testimony in the light of his interest, but that if after such scrutiny the jury finds he was telling the truth, to give his testimony the same weight as that of any other credible witness.

**4. Same—**

   Where defendant's brother-in-law, living in defendant's house, testifies that the nontaxpaid liquor found in the house belonged to him, an instruction to the effect that the brother-in-law, in testifying for defendant, was an interested witness as a matter of law, is erroneous, since it must be presumed that the interest of the witness against self-incrimination was at least as strong as the bias which would incline him to testify in behalf of a brother-in-law.

APPEAL by defendant from *McLean, J.,* June Term, 1960, of Mc-Dowell.

Criminal prosecution on warrant charging unlawful possession of illicit liquors for the purpose of sale in violation of G.S. 18-50, tried *de novo* in superior court on appeal by defendant from conviction and judgment in McDowell County Criminal Court.

The State's evidence consists of the testimony of one of three officers who, as authorized by search warrant, went to and searched defendant's house and premises (about one-half mile west of Old Fort) on April 29, 1960, about 9:00 p.m.

The officer's testimony tends to show: The search warrant was read to defendant's son, a high school boy 15 or 16 years old, the only person in defendant's house or on his premises when the search was made. The officers found (1) in the kitchen, under the sink, a half-gallon jar containing approximately a pint of nontaxpaid whiskey, (2) in the bedroom, "approximately" three cases of nontaxpaid whiskey, each case containing four one-gallon jugs, and (3) in a tool box in defendant's yard, in back of defendant's barn or garage and some ten steps from the back door of defendant's house, six gallons of nontaxpaid whiskey in an undescribed container offered in evidence as State's Exhibit #4. Defendant drove up while the officers were on his premises, after they had found the whiskey, at which time defendant was arrested. Defendant, his wife and his said son had lived in defendant's said house "for several years." The officer testified: "I know now but didn't know at the time, that Thomas Hoyle lived there in the home with Mr. and Mrs. Turner."

The evidence offered by defendant consists of the testimony of defendant, the testimony of Thomas Hoyle, and defendant's affidavit (admitted by agreement of the solicitor) setting forth what his wife would testify if able to attend court.

Evidence for defendant tended to show that he and his wife had owned the property and had lived there since 1944; that Thomas Hoyle, a brother of defendant's wife, had lived in his "daddy's" homeplace, some two miles out of town, until it was sold "to the Old

Fort Golf Course"; that Hoyle, having no home of his own, then came to live with defendant and defendant's wife; and that Hoyle had been living there "about a couple of weeks."

Defendant testified he had no knowledge of the whiskey, that no whiskey was in his house when he left about 11:00 o'clock on the morning of April 29, 1960; and that he was away from home continuously until his return and arrest about 9:00 p.m. He testified the tool box belonged to Donald Cody, his son-in-law, a builder, and that the tool box had a lock on it.

Hoyle testified he owned the whiskey; that, pursuant to his arrangement therefor, the whiskey was transported to defendant's house and premises "about sundown in the evening the law got it"; that he put part of the whiskey in the bedroom where he slept, part in the tool box, took a drink out of one jar and put this jar under the kitchen sink and left; and that defendant was not at home when this was done and knew nothing about it.

Defendant's said affidavit set forth that defendant's wife would testify that she left home about 1:00 p.m. on April 29, 1960, to go to her work at Beacon Manufacturing Company in Swanannoa, and that when she left home there was no whiskey in the house.

The jury returned a verdict of guilty as charged. Thereupon, judgment, imposing a prison sentence, was pronounced. Defendant appealed, assigning errors.

*Attorney General Bruton and Assistant Attorney General Moody for the State.*

*Proctor & Dameron for defendant, appellant.*

BOBBITT, J.　As to nonsuit, the crucial question is whether the evidence was sufficient to support the finding that the nontaxpaid whiskey found in defendant's home and in the tool box in his yard, in excess of eighteen gallons, was in defendant's possession, actual or constructive, or was kept on his premises with his knowledge and consent. If so, there was evidence sufficient to support defendant's conviction. *S. v. Avery,* 236 N.C. 276, 72 S.E. 2d 670; *S. v. Guffey,* 252 N.C. 60, 112 S.E. 2d 734.

Defendant relies largely on *S. v. Guffey, supra,* in support of his contention that the court erred in overruling his motion for judgment of nonsuit. But in *Guffey,* according to the State's evidence (the defendant offered none), four adult persons, two who lived in the defendant's house and two outsiders, were present in the defendant's house when the search was made; and, under these circum-

stances, the officers found a half-gallon jar of nontaxpaid whiskey, with the lid off, in plain view. Apart from the fact that neither Guffey nor this defendant was at home when the search was made, the factual situation in *Guffey* is quite different from that here considered.

The only person actually on defendant's premises when the search was made was defendant's teen-age son, who was not offered as a witness. Defendant drove up before the officers had left his premises. Hoyle was not there when the search was made. There was no evidence as to when Hoyle was last in defendant's house or on his premises prior to "about sundown" on the day of the search. Nor was there evidence as to when Hoyle returned to defendant's premises subsequent to the search. Hoyle testified that he "went uptown to (his) sister's" after he had left the whiskey in defendant's house and in the tool box. He testified further that he did not know anything about "it" (presumably the finding of the nontaxpaid whiskey) until the next day when he was told that "they caught Willard." The credibility of Hoyle's testimony to the effect that he had been in defendant's house and on his premises "about sundown" on the day of the search was for jury determination.

The present case is quite different from *S. v. Hanford*, 212 N.C. 746, 194 S.E. 481, cited by defendant, where nontaxpaid liquor was found in the private room of the defendant's tenant, an area of defendant's house over which his tenant had full control. Here the evidence tends to show that Hoyle, for lack of a home elsewhere, was permitted (at least for "a couple of weeks") to live in defendant's house. Nothing in the evidence supports the view that Hoyle had or attempted to exercise any right of control over any portion of defendant's house or premises.

The testimony tending to exonerate defendant comes from defense witnesses. The credibility of each of these witnesses and the weight to be given his testimony were matters for jury determination. *S. v. Avery, supra; S. v. Harrison*, 239 N.C. 659, 80 S.E. 2d 481. It is noted that the testimony of defendant and of Hoyle was set forth, in our preliminary statement of facts, in the light most favorable to defendant. Suffice to say, the credibility of the testimony of each of these witnesses seems to have been somewhat impaired by the testimony of each on cross-examination.

Defendant's assignment of error directed to the court's refusal of motion for judgment of nonsuit is overruled.

Defendant assigns as error this portion of the charge:

"The Court instructs you that the defendant has gone upon

the witness stand as a witness in his own behalf. Likewise the witness, Thomas Hoyle, went upon the witness stand as a witness for the defendant, he being a brother-in-law of the defendant.

"The Court instructs you that where a defendant goes upon the witness stand in his own behalf, or a near relative goes upon the witness stand in his behalf, that such witnesses are interested witnesses, interested in the outcome of your verdict, and it is your duty to very carefully scan and scrutinize the testimony of such witnesses in the light of their interest in the outcome of your verdict."

Immediately thereafter the court gave this qualifying instruction:

"However, the Court specifically instructs you if after so doing you find that an interested witness is telling the truth, then you would give to the evidence of that witness the same weight and credit you would give to any other disinterested credible witness."

Ordinarily, when so qualified, the instruction set forth in the second paragraph of the challenged portion of the charge is fully supported by our decisions. *S. v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606, and cases cited. Indeed, *S. v. Barnhill,* 186 N.C. 446, 119 S.E. 894, where the defendant's brother-in-law was a principal defense witness, a similar instruction was approved.

Obviously, a defendant is an interested witness. By statute, G.S. 8-54, he may, at his election, testify in his own behalf; but it is noteworthy that "(t)he common law regarded the testimony of a defendant in criminal actions as incompetent upon the theory, among others, that the fraility of human nature and the overpowering desire for freedom would ordinarily induce a person charged with crime, if permitted to testify, to swear falsely." *S. v. Wilcox,* 206 N.C. 691, 175 S.E. 122. The reason "a near relative" is considered an interested witness and his testimony subject to close scrutiny before acceptance is "that such relations create a strong bias, and that it is an infirmity of human nature sometimes, in instances of great peril to one of the parties, to yield to the bias produced by the depth of sympathy and *identity of interests* between persons so closely connected." (Our italics.) *S. v. Ellington,* 29 N.C. 61.

While the quoted instructions, as applied to defendant's testimony, are approved, we are constrained to hold that, when considered in the context of the evidence in this particular case, these instructions tended improperly and prejudicially to discredit the testimony of Hoyle. The purport of the instructions is that Hoyle, *as a matter of*

*law*, was to be considered an interested witness and that Hoyle's testimony and defendant's testimony were to be subjected to close scrutiny in like manner.

Hoyle was not present when the whiskey was found in defendant's house and on defendant's premises. There was no evidence that Hoyle had been arrested for or accused of any offense relating to this whiskey. His testimony that he was the sole owner of the whiskey and had put it where the officers found it, in defendant's absence and without defendant's knowledge and consent, was an open admission of criminal conduct for which he was subject to prosecution; and, so far as the record discloses, no evidence to support a prosecution of Hoyle was available until he testified at defendant's trial. Thus, Hoyle's testimony, while it tended to exonerate defendant, definitely and positively incriminated Hoyle and subjected him to criminal prosecution.

The factual situation here is quite different from that considered in *S. v. Barnhill, supra*, where the testimony of defendant's brother-in-law tended to establish defendant's alibi but did not in any way tend to incriminate the witness. In our view, nothing else appearing, the bias that would incline a person to testify in his own interest, that is, in such manner as to protect himself from criminal prosecution, should be regarded at least as strong as the bias that would incline him to testify in behalf of a brother-in-law and against his own interest.

The fact that Hoyle was defendant's brother-in-law as well as the fact that Hoyle's testimony was "to his own hurt," along with other circumstances disclosed by the evidence, were proper for consideration by the jury in passing upon the credibility of Hoyle and the weight to be given his testimony; but to say that Hoyle, under the circumstances here considered, was an interested witness, as a matter of law, in the sense that his testimony was subject to close scrutiny because of bias that would incline him to testify falsely in favor of his brother-in-law, notwithstanding by so doing he definitely and positively incriminated himself, extended the rule in respect of the testimony of close relatives beyond the underlying reason that invokes its application and tended improperly and prejudicially to discredit Hoyle's testimony.

It appearing that prejudicial error as indicated above was committed in respect of the quoted portion of the charge, a new trial is awarded.

New trial.