STATE OF NORTH CAROLINA v. WILLIAM NORMAN BARROW

No. 3

(Filed 11 March 1970)

**1. Criminal Law § 98;  Trial § 5—  sequestration of witnesses — discretionary with court**

It is the general rule in this State, in both civil and criminal cases, to separate witnesses and send them out of the hearing of the Court when requested, but this practice is discretionary with the trial judge and may not be claimed as a matter of right.

**2. Criminal Law § 98—  motion to sequester — review**

A judge's refusal to sequester the State's witnesses is not reviewable unless an abuse of discretion is shown.

**3. Criminal Law § 43;  Homicide § 20—  photograph of the deceased — admissibility**

In a prosecution for homicide, the trial court properly admitted the photograph used by a State's witness to illustrate his testimony relating to the position and appearance of the deceased's body.

**4. Criminal Law § 43—  gruesome photographs — admissibility**

If a photograph is relevant and material, the fact that it is gory or gruesome, and thus may tend to arouse prejudice, will not alone render it inadmissible.

**5. Criminal Law §§ 75, 86, 89—  impeachment of defendant — use of statement not previously admitted in evidence — harmless error**

In a homicide prosecution in which the State offered eyewitness testi-

mony that the defendant shot the deceased three times and the defendant on direct examination denied any recollection that he shot the deceased more than once, the defendant was not prejudiced by the solicitor's attempt to cross examine him with regard to his purported in-custody statement, not previously introduced, that he had shot the deceased three times, where the trial court, upon defendant's objection, struck all reference to the purported statement and instructed the jury not to consider it.

**6. Criminal Law § 169— questions of solicitor — objection — prejudice**

Where the court sustains objection to questions asked by the solicitor, no prejudice results.

**7. Criminal Law § 169— striking of evidence — effect on jury**

When all evidence of a particular character is stricken and the jury instructed not to consider it, any prejudice is ordinarily cured, unless the evidence stricken was so highly prejudicial that its effect cannot be erased from the minds of the jurors.

**8. Criminal Law § 169— admission of technically incompetent evidence — harmless error**

The admission of evidence, even though technically incompetent, will not be held prejudicial unless it is made to appear that defendant was prejudiced thereby and that a different result would have likely ensued had the evidence been excluded.

**9. Criminal Law § 117— instructions — scrutiny of defendant's testimony**

The trial court may properly instruct the jury to scrutinize carefully the testimony of defendant and to take into consideration the interest which he has in the verdict, but that if after such scrutiny the jury finds he was telling the truth, to give his testimony the same weight and credibility as that of any disinterested witness.

**10. Homicide § 24— instructions — presumptions arising from intentional use of deadly weapon — proof of mitigation or excuse**

In a second-degree murder prosecution, the trial court properly instructed the jury that if they found from the evidence and beyond a reasonable doubt that the defendant killed the deceased with a deadly weapon, then the presumptions arise that the killing was unlawful and that it was done with malice, thereby constituting murder in the second degree unless the defendant proved to the satisfaction of the jury the facts which would justify his act or mitigate it to manslaughter.

APPEAL by defendant from decision of the Court of Appeals upholding judgment of *Beal, S.J.,* at the 2 June 1969 Regular Schedule "D" Session of MECKLENBURG Superior Court.

Criminal action upon a bill of indictment charging defendant with the murder of John Smith on 8 May 1969. The solicitor sought only a verdict of guilty of murder in the second degree or manslaughter, as the evidence might disclose.

The State's evidence tends to show that defendant and others lived in a two-story rooming house at 204 North McDowell Street in the City of Charlotte. The deceased, John Smith, lived next door. On 8 May 1969 about 7:30 p.m. defendant and John Smith were sitting on the front porch of the rooming house drinking spiked Kool-Aid from the same jar and talking. After consuming the contents of that jar, defendant mixed Kool-Aid with grain alcohol in another jar and the two men continued to drink. There was no quarrel, disturbance or confusion between them. They were just sitting there talking and drinking when defendant arose, entered the rooming house, went upstairs to his room, obtained a single-barreled shotgun, returned downstairs, exited through a side door, went to the front of the house and advanced to a point within a few feet of John Smith who was still in a chair on the porch. Then, taking his time, defendant aimed the gun at John Smith and shot him. Smith arose from his chair, tried to enter the front door but was unable to get it open, and fell to the floor. Defendant then reloaded his gun, walked upon the porch to a point closer to Smith, and shot him again. Defendant then went around the house, re-entered at the side door, went upstairs, and returned immediately to the front porch where he shot John Smith a third time as he lay on the floor in the doorway. Smith died where he lay as a result of the gunshot wounds. No knife, gun or other weapon of any kind was found on or about his person.

As a witness in his own behalf, defendant testified that John Smith had never been to the rooming house before this day; that he was sitting on the porch drinking Kool-Aid mixed with grain alcohol when John Smith came up, asked for a drink and was given one. Defendant testified that Smith then wanted to borrow some money and, upon refusal, said "I'll take my knife and cut off your head if you don't give it to me." Smith then pulled his knife, according to defendant, threatened defendant with it and stated he would cut off defendant's head if he didn't let him have the money. Smith was called away to answer a telephone but said he would be back. He returned within five minutes, took a chair on the porch beside defendant and asked for more of the spiked Kool-Aid. Defendant refused to give him another drink whereupon Smith again threatened him about the money. Defendant then arose, went upstairs and got the gun, and came back "to scare him off the porch." When defendant came around to the front yard with the gun, John Smith jumped out of his chair and "went for his pocket." He started his hand in his pocket but "never got nothing out of his pocket. That is when I shot him. I was standing about four feet from the first step when I shot

him. John Smith was standing up by the chair, that white chair . . . on the right hand side of the porch. He didn't say anything to me. . . . I never had any fusses or fights with him before." Defendant further testified that he remembered shooting Smith one time on the front porch but did not remember shooting him a second or third time.

The jury returned a verdict of guilty of murder in the second degree and the court imposed a prison sentence of thirty years. Defendant appealed to the Court of Appeals where the judgment was upheld, Brock, J., dissenting. See 6 N.C. App. 475, 170 S.E. 2d 563. Defendant, pursuant to G.S. 7A-30(2), appealed as of right to the Supreme Court assigning errors noted in the opinion.

*Weinstein, Waggoner, Sturges & Odom, by T. LaFontine Odom and Wallace C. Tyser, Jr., Attorneys for defendant appellant.*

*Robert Morgan, Attorney General, by James F. Bullock, Deputy Attorney General, and (Mrs.) Christine Y. Denson, Staff Attorney, for the State.*

HUSKINS, J.

At the commencement of the trial defendant moved to sequester the State's witnesses and assigns as error the denial of his motion.

**[1, 2]** It is the general rule in North Carolina, in both civil and criminal cases, to separate witnesses and send them out of the hearing of the court when requested. But this is discretionary with the trial judge and may not be claimed as a matter of right. Stansbury, N. C. Evidence § 20 (2d ed. 1963); *State v. Manuel,* 64 N.C. 601 (1870); *State v. Spencer,* 239 N.C. 604, 80 S.E. 2d 670; *State v. Love,* 269 N.C. 691, 153 S.E. 2d 381. "A judge's refusal to sequester the State's witnesses is not reviewable unless an abuse of discretion is shown." *State v. Clayton,* 272 N.C. 377, 158 S.E. 2d 557. Accord, *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802; *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506, cert. den. 384 U.S. 1020, 16 L. ed 2d 1044, 86 S. Ct. 1936; 2 Strong, N. C. Index 2d, Criminal Law § 98 (1967). This is in accord with the great majority of jurisdictions. "Reasons for the majority view are the rule that trials should be open to the public, the fact that witnesses have an interest in the course of the litigation, and the danger that the rule might be used to unnecessarily delay and obstruct trials. It has been said that the discretion to exclude witnesses is a sound judicial discretion, and that courts should not arbitrarily refuse to enforce the rule, nor should litigants or lawyers be permitted to require it arbitrarily." 53 Am.

Jur., Trial § 31 (1945). The record discloses no reason for sequestration of the witnesses, and no abuse of discretion has been shown. This assignment of error has no merit and is overruled.

**[3]** Defendant's second assignment of error is to the admission for illustrative purposes of a photograph showing the body of deceased as it lay in the doorway of the rooming house.

**[3, 4]** We note that inaccuracy of the photograph in any particular is not claimed. It was used to illustrate the testimony of the witness Walter Smith with respect to the position of the body, and the blood surrounding it, as it lay face down in the doorway after having been shot the third time. It was relevant and material and therefore competent for that purpose. "If a photograph is relevant and material, the fact that it is gory or gruesome, and thus may tend to arouse prejudice, will not alone render it inadmissible." Stansbury, N. C. Evidence § 34 (2d ed. 1963); *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241; *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824. The holdings of this Court in that respect are in accord with authorities from other jurisdictions. See Annotation, Evidence — Photograph of Corpse, 73 A.L.R. 2d 769. Defendant's second assignment of error is overruled.

An examination of the record is necessary to bring defendant's next assignment of error into proper focus.

**[5]** During the presentation of the State's case, no evidence was elicited from Detective Fesperman concerning a statement made by defendant following his arrest. Although Fesperman testified with respect to his investigation of the crime, the State's case was developed largely by the testimony of two eyewitnesses. Then defendant, testifying in his own behalf, stated that he went upstairs, got the gun, came back down and went around the house into the front yard; that he shot the deceased when he "jumped out of the chair and went for his pocket." On cross examination, without objection, defendant stated that he talked to Mr. Fesperman about the case and "signed a written statement, but it wasn't too many words. I suppose I told Mr. Fesperman that I got three shells, one of which I put in the chamber of the shotgun and the other two I put in my pockets. . . . The first time I shot the man, he was on the porch and I was on the walkway at the steps." Defendant denied all recollection of shooting the deceased more than once. Thereupon the following cross examination took place:

"Q.  But when you (the defendant) talked with Mr. Fesperman at 9:30 that night, which was within a hundred and

twenty minutes after it happened, did you or did you not tell him that after you shot him the first time I reloaded my gun, went on the porch, and shot him while he was lying down in the front door?

MR. ODOM: Objection. It appears the Solicitor is reading from a statement and trying to get in the back door what he couldn't get in the front door.

THE COURT: Objection overruled."

DEFENDANT'S EXCEPTION #10 (R p 33)

"Q. When you (the defendant) talked with Mr. Fesperman at the police station at 9:30 on the night of May 8, 1969, you did tell him that you shot the man the third time, didn't you?

A. I don't remember whether I did or not.

Q. Well, let me show you this paperwriting and ask you whether or not it refreshes your recollection?

A. I know I—

MR. ODOM: I'm going to object to the paperwriting, your Honor, and move to strike.

THE COURT: Well, objection sustained.

MR. SCHWARTZ: Your Honor, we want to show if he made any prior inconsistent statements about this.

THE COURT: He said he didn't remember.

MR. SCHWARTZ: Well, I would like to see if I could refresh his recollection.

THE COURT: I'll let you ask him if it refreshes his recollection.

MR. SCHWARTZ: Yes, sir.

Q. (BY MR. SCHWARTZ) This statement here with your signature on it at the bottom, do these last few lines on this statement refresh your recollection about it, starting right here. I then, and from there on.

MR. ODOM: I object again to the reference to the statement used by the Solicitor.

THE COURT: Overruled.

MR. ODOM: Exception.

A. These phrases here was supposed to be made what first happened.

THE COURT: Objection sustained.

Q. (BY MR. SCHWARTZ) Well, did you tell Mr. Fesperman then that —

THE COURT: Wait just a minute. Now, members of the jury, you will not consider any statements that the defendant has made about the paperwriting, whether it refreshes his memory or whether it doesn't.

Q. (BY MR. SCHWARTZ) Well, what did you tell Mr. Fesperman the night that this happened at the police station, Mr. Barrow?

A. He told me that I didn't have to make any statements if I didn't want to, you know. I remember his telling me that. And he asked me some details on it, and I told him a few things. He asked me if I could think of any more to tell and I said no.

Q. What were those few things that you told him?

A. I told him when he first came up there —

THE COURT: Objection. The Court on its own motion sustains the objection and orders it stricken from the record, anything about that examination as to what's on that paper. Ladies and gentlemen of the jury, you will not consider any of the examination at all about what's on that paper."

## DEFENDANT'S EXCEPTION #11 (R pp 34, 35)

Defendant contends the court erred in allowing the solicitor, over objection, to cross examine him regarding an incriminating statement he allegedly made to Detective Fesperman while in custody without previously having determined on voir dire that he had been warned of his constitutional rights and had voluntarily, knowingly and intelligently waived them, relying on *Miranda v. Arizona*, 384 U.S. 436, 16 L. ed 2d 694, 86 S. Ct. 1602 (1966); *Jackson v. Denno*, 378 U.S. 368, 12 L. ed 2d 908, 84 S. Ct. 1774 (1964); and *State v. Edwards*, 274 N.C. 431, 163 S.E. 2d 767 (1968).

[6] We decline to pass upon the constitutional question posed by this assignment. The court finally sustained defendant's objection, ordered all testimony with reference to defendant's alleged statement stricken from the record, and instructed the jury not to consider "any of the examination at all about what's on that paper." Our decisions hold that where the court sustains objection to questions asked by the solicitor, no prejudice results. *State v. Butler*, 269 N.C. 483, 153

S.E. 2d 70. Ordinarily, merely asking the question will not be held prejudicial. *State v. Williams,* 255 N.C. 82, 120 S.E. 2d 442; *State v. Hoover,* 252 N.C. 133, 113 S.E. 2d 281. Compare *State v. Phillips,* 240 N.C. 516, 82 S.E. 2d 762.

[7, 8] Furthermore, when all evidence of a particular character is stricken and the jury instructed not to consider it, any prejudice is ordinarily cured, *State v. Burton,* 256 N.C. 464, 124 S.E. 2d 108; *State v. Hamer,* 240 N.C. 85, 81 S.E. 2d 193; *State v. Perry,* 226 N.C. 530, 39 S.E. 2d 460, unless the evidence stricken was so highly prejudicial that its effect cannot be erased from the minds of the jurors — in which event error in its admission is not cured by its withdrawal and instructions not to consider. *State v. Foye,* 254 N.C. 704, 120 S.E. 2d 169; *State v. Frizzelle,* 254 N.C. 457, 119 S.E. 2d 176; *State v. Aldridge,* 254 N.C. 297, 118 S.E. 2d 766; *State v. Choate,* 228 N.C. 491, 46 S.E. 2d 476. The evidence stricken here was not highly prejudicial. In fact, it was not prejudicial at all. Two eyewitnesses had already testified that defendant shot deceased three times. Defendant himself had already testified on both direct and cross examination that he shot deceased once and didn't recall shooting a second or third time. The stricken evidence at most could only serve to impeach defendant's professed loss of memory about the second and third shots. This was relatively unimportant because there was abundant evidence to support the main contentions of the State. The admission of evidence, even though technically incompetent, will not be held prejudicial unless it is made to appear that defendant was prejudiced thereby and that a different result would have likely ensued had the evidence been excluded. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481; *Gasque v. State,* 271 N.C. 323, 156 S.E. 2d 740; *State v. Temple,* 269 N.C. 57, 152 S.E. 2d 206; *State v. Rowland,* 263 N.C. 353, 139 S.E. 2d 661; *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916; *State v. Bennett,* 237 N.C. 749, 76 S.E. 2d 42. "The burden is on defendant to show not only that there was error but also that the error affected the result adversely to him." *State v. Rowland, supra.* No such showing is made here; therefore, this assignment, based on Exceptions 10 and 11, is overruled.

[9] Defendant's fourth and fifth assignments relate to various errors allegedly committed in the charge. Referring to defendant's testimony, the court charged: "Members of the jury, when you come to consider his evidence, the Court instructs you that it is your duty to carefully consider and scrutinize his testimony, he having gone upon the witness stand and testified in his own behalf. So you, the

jury, ought to take into consideration the interest which the defendant, William Norman Barrow, has in the result of this action and in your verdict in the case. But the Court instructs you that the law requiring you to scrutinize his testimony does not require that you impeach such evidence or that you reject it, because if you find, after considering the testimony of the defendant in this case, that he has told you the truth, then you will give ·the same weight and credibility to his testimony as you would to any unbiased or dis-interested witness. . . ." Defendant says this charge focused at-tention upon his veracity and was prejudicial.

The challenged instruction finds approval in the decisions of this Court. *State v. Turner,* 253 N.C. 37, 116 S.E. 2d 194; *State v. Worrell,* 232 N.C. 493, 61 S.E. 2d 254; *State v. Parsons,* 231 N.C. 599, 58 S.E. 2d 114; *State v. Hightower,* 226 N.C. 62, 36 S.E. 2d 649; *State v. Redfern,* 223 N.C. 561, 27 S.E. 2d 441; *State v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606; *State v. Holland,* 216 N.C. 610, 6 S.E. 2d 217; *State v. Davis,* 209 N.C. 242, 183 S.E. 420; *State v. Anderson,* 208 N.C. 771, 182 S.E. 643; *State v. Deal,* 207 N.C. 448, 177 S.E. 332.

**[10]**   Defendant excepts to the following portion of the charge: "If you find from the evidence and beyond a reasonable doubt that the defendant William Barrow intentionally killed the deceased with a deadly weapon, and the Court instructs you that the shotgun de-scribed in evidence in this case is a deadly weapon, the law raises two presumptions against the defendant. First, that the killing is unlawful, and, second, that it was done with malice, and an unlawful killing with malice is murder in the second degree, and the defend-ant would be guilty of murder in the second degree unless he can satisfy you, the jury, of the truth or fact which justifies his act or mitigates it to manslaughter. The burden in that event would be on the defendant to establish such facts to the satisfaction of you, the jury; now, not beyond a reasonable doubt, nor by the greater weight of the evidence, but to the satisfaction of the jury, unless they arise out of the evidence against him; that is, if he would rebut the pre-sumption arising from such showing, he must establish to the satis-faction of the jury the legal provocation which will take from the crime the element of malice and thus reduce it to manslaughter or which will excuse it altogether on the grounds of self-defense, and this, ladies and gentlemen, may arise out of the evidence offered against him." Defendant says this charge placed a burden of proof upon him which should legally be placed upon the State and was thus prejudicial.

When the State satisfies the jury from the evidence beyond a reasonable doubt that defendant intentionally shot the deceased and thereby proximately caused his death, the law raises two presumptions against him: First, that the killing was unlawful; and, second, that it was done with malice; and an unlawful killing with malice is murder in the second degree. *State v. Cooper,* 273 N.C. 51, 159 S.E. 2d 305; *State v. Todd,* 264 N.C. 524, 142 S.E. 2d 154; *State v. Phillips,* 264 N.C. 508, 142 S.E. 2d 337; *State v. Johnson,* 261 N.C. 727, 136 S.E. 2d 84; *State v. Carter,* 254 N.C. 475, 119 S.E. 2d 461; *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39; *State v. Revis,* 253 N.C. 50, 116 S.E. 2d 171. "The law then casts upon the defendant the burden of showing to the satisfaction of the jury, if he can do so — not by the greater weight of the evidence nor beyond a reasonable doubt, but simply to the satisfaction of the jury — from all the evidence, facts and circumstances, the legal provocation that will rob the crime of malice and thus reduce it to manslaughter, or that will excuse it altogether upon the ground of self-defense. . . . The legal provocation that will rob the crime of malice and thus reduce it to manslaughter, and self-defense, are affirmative pleas, with the burden of satisfaction cast upon the defendant." *State v. Todd, supra.* Thus the challenged instruction is supported by our decisions, and defendant's exception thereto is overruled. See *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322.

The remaining assignments relating to the charge are equally devoid of merit. The charge as a whole is free from prejudicial error.

The record discloses a senseless, unprovoked killing. There is little evidence to support a plea of self-defense. In fact, defendant's own testimony is sufficient to carry the case to the jury and support a conviction of murder in the second degree.

The decision of the Court of Appeals upholding the verdict and judgment is

Affirmed.