STATE OF NORTH CAROLINA v. HAROLD DAVID POOLE

No. 62

(Filed 17 December 1975)

1. Criminal Law § 34— kidnapping case — evidence of commission of
   rape — admissibility

   The trial court in a kidnapping case did not err in allowing the
   kidnap victim's testimony that defendant committed the crime of rape
   in addition to the crime of kidnapping, since the purpose for which
   defendant carried his victim into the woods was obviously relevant
   to the charge of kidnapping, among other things bearing directly
   upon the motive for kidnapping her, and the rape and kidnap were
   a part of the same transaction and were so connected in time or cir-
   cumstance that one could not be fully shown without proving the other.

2. Criminal Law § 86— cross-examination of defendant — prior crimes —
   inquiry proper

   A defendant may not be asked on cross-examination for impeach-
   ment purposes if he has been accused, arrested or indicted for a par-
   ticular crime, but he may be asked if he in fact committed the crime;
   therefore, the trial court in a kidnapping case did not err in allow-
   ing the district attorney to cross-examine defendant regarding other
   alleged kidnappings when he had not been convicted of such crimes.

3. Criminal Law §§ 114, 117— jury instruction — testimony of interested
   witnesses scrutinized — use of word "his" — no expression of opinion

   The trial court's admonition to the jury to scrutinize the testi-
   mony of any interested witness and the court's use of the pronoun
   "his" in referring to the testimony of such witness did not constitute
   an expression of opinion upon the credibility of defendant, since the
   court used the term "his" to refer to all the witnesses who testified,
   both male and female, and since the court's admonition to scrutinize
   included not only the defendant but also the testimony "of any wit-
   ness" and such instruction was proper.

4. Criminal Law § 114— jury instructions — use of word "rape" — cura-
   tive instruction — no error

   The trial court's instruction to the jury that, "The evidence of
   the State further tended to show that before the defendant ɪraped
   Phyllis McGill she pretended to faint; . . . " did not amount to an
   expression on the judge's part that such fact had been established,
   since the language complained of was used by the judge while re-
   capitulating the State's evidence, the jury was instructed elsewhere in
   the charge that what the evidence actually did show was a question
   of fact for the jury, and the trial judge gave the jury a full and
   adequate curative instruction regarding the use of the word "rape."

DEFENDANT appeals from judgment of Long, J., 28 April
1975 Session, MOORE Superior Court.

Defendant was tried upon a bill of indictment charging that on 11 March 1975 in Moore County he unlawfully, willfully, feloniously and forcibly kidnapped Phyllis Cooper McGill.

Phyllis Cooper McGill testified that she lived in Raleigh. On 11 March 1975 she had a dental appointment in Robbins, North Carolina, and left Raleigh on that date to keep the appointment. After passing through Carthage and while proceeding toward Robbins, she noticed a green Plymouth following her. She thought it was a policeman. The green Plymouth followed her rather closely for three or four miles and its driver turned on a red flashing light. Confirmed in the notion that it was an officer, she pulled over, cut off her engine and began searching through her pocketbook for her driver's license. Defendant got out of the green Plymouth, walked to Mrs. McGill's car and told her the right tire was coming off her car. She opened the door to investigate, then, sensing something was wrong since he was not in uniform, slammed the door and tried to start her car. At this point defendant grabbed her hands, opened the car door, pushed Mrs. McGill over and seated himself under the wheel. He told her to calm down and be quiet. He told her the Moore County police were after him and he wanted her to take him to his mother's home in Montgomery County where he would let her go. He started the car, drove it about five hundred yards but seemed to be stripping the gears. Mrs. McGill screamed that he was tearing up the car, whereupon he told her to drive. She got under the wheel and drove as he directed. They went through the back streets of Robbins and drove five or six miles over back roads into Montgomery County. Leaving the paved roads, they went down a dirt road for about five miles. Upon reaching a secluded area in the woods he commanded her to stop and took the keys from her car. Then, at his command, she walked deeper into the woods, stopping from time to time along the way. Eventually they sat down and defendant said: "You know what is going to happen now don't you?" She told him she had a pretty good idea.

At this point Mrs. McGill pretended to faint. Defendant grabbed her around the neck and said if she did not do as he directed he would have to kill her. He removed her clothing and had sexual relations with her three or four times. He told her he would have to kill her to prevent her from reporting the incident. She feared for her life and reassured him that

State v. Poole

she wouldn't notify the authorities. It suddenly began to rain and defendant seemed unable to find his way out of the woods. She took him by the hand, told him he was going the wrong way, and directed their course out of the woods and back to her car. On the way back to his car they talked quite a bit and defendant "acted like he was real sorry it had happened." He left Mrs. McGill's car at the point where his green Plymouth was parked. She thereupon drove to the home of her parents who lived nearby in Moore County and told them what had happened. Officers were called and defendant was later apprehended. She had never seen him prior to that afternoon.

Deputy Sheriff Ernest Hooker investigated the case. He testified he had known defendant six or eight months, was familiar with the 1969 green four-door Plymouth he operated, and found a red light on the front seat of it on the day following this offense.

Defendant testified as a witness in his own behalf. He said that on 11 March 1975 at about 2 p.m. he was in his Plymouth at a street intersection in Carthage. He saw Mrs. McGill smile and wave at him as she drove away from the intersection in a red MG. He followed her to the point where they stopped, a distance of several miles. He attempted to pass her several times but she would speed up—"It seemed she wanted to play a game." He stated he had a red light in his car and blinked it each time he started to pass her—"I was just playing with it the whole time." Finally, while about 150 yards behind her, he blinked the light and she pulled off the highway and stopped. Defendant pulled to the shoulder of the road, parked his car, and went to her car where they had a friendly conversation in which he indicated he wanted a date with her. She said, "We'll make it some other day." He replied, "Well, let's go uptown and get a hamburger or something." She replied, "No, I'd rather not go to town and get anything to eat, we can go somewhere and have a feast without buying anything to eat."

Defendant testified they left in her car with him driving. Since he was not accustomed to a gearshift, she asked to drive, got out on the passenger side and walked around behind the car and got into the driver's seat. She inquired about a wooded area and stated she did not want to go through Robbins because she was known there. Defendant testified he directed her along the back roads to the point where they parked the car

and walked into the woods. There, defendant testified she undressed, insisted on having sexual relations with him, but never succeeded by reason of his impotency. He testified he was like a dead person and kept thinking of his wife from whom he was separated and his great love for her. He said it started raining and they began walking back to the car in the nude but, due to the briars and twigs, put on their clothing. When they arrived at her car, he gave her the keys and showed her the nearest way back. They talked in a friendly, casual way and she wanted to see him again. He followed her in his car all the way back to Carthage and she waved good-bye as she turned and drove down the Cameron road. Defendant said: "I did not at any time try to force her or trick her into going any place with me. I did not at any time try to force her or trick her into having intercourse."

The jury convicted defendant of kidnapping and he was sentenced to life imprisonment. He appealed to the Supreme Court alleging errors discussed in the opinion.

*W. Lamont Brown, attorney for defendant appellant.*

*Rufus L. Edmisten, Attorney General; Thomas B. Wood, Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

[1]  Defendant's first assignment of error is based on the admission of Mrs. McGill's testimony that defendant committed the crime of rape in addition to the crime of kidnapping.

It is a general rule of evidence that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47 (1972). But it is equally well established that this rule does not apply when the two crimes are parts of the same transaction and are so connected in time or circumstance that one cannot be fully shown without proving the other. *State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972): *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954).

Stansbury formulates the rule in this fashion: "Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to

prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." 1 Stansbury, North Carolina Evidence, § 91 (Brandis rev. 1973).

The purpose for which defendant carried Mrs. McGill into the woods of Montgomery County is obviously relevant to the charge of kidnapping. Among other things, it bears directly upon the motive for kidnapping her. The rape and kidnap are part of the same transaction and are so connected in time or circumstance that one cannot be fully shown without proving the other. *State v. Caddell,* 287 N.C. 266, 215 S.E. 2d 348 (1975). This assignment is without merit and is overruled.

[2] The record shows that, over objection, the district attorney asked defendant if he did not forcibly kidnap Judy Sheffield on the same day as this offense. Defendant denied it. He was asked if he had not forcibly kidnapped Veronica Clendenin on 14 March 1975. Defendant said he had been accused of it but didn't do it. He was asked if on the night of 14 March 1975 he kidnapped two men in Richmond County and took them to a fire tower in Montgomery County. Defendant answered in the negative but stated he was in the fire tower and called the sheriff's department himself. He said no charges had been brought against him in connection with the incident.

Defendant contends the court erred in allowing the district attorney to cross-examine him regarding other alleged kidnappings when he had not been convicted of such crimes. This constitutes his second assignment of error.

Defendant's contention that cross-examination concerning criminal conduct is limited to inquiry about prior convictions is unsound. We held in *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971), that "[i]t is permissible, for purposes of impeachment, to cross-examine a witness, including a defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal or degrading conduct. [Citations omitted.] Such questions relate to matters *within the knowledge of the witness,* not to accusations of any kind made by others."

It has long been the rule in this jurisdiction that where a defendant in a criminal case testifies in his own behalf, specific acts of misconduct may be brought out on cross-examination to impeach his testimony. *State v. Griffin,* 201 N.C. 541,

160 S.E. 826 (1931); *State v. Colson*, 194 N.C. 206, 139 S.E. 230 (1927); *State v. Davidson*, 67 N.C. 119 (1872); *State v. Patterson*, 24 N.C. 346 (1842); 1 Stansbury, North Carolina Evidence, § 111 (Brandis rev. 1973). Such cross-examination for impeachment purposes is not limited to conviction of crimes. "Any act of the witness which tends to impeach his character may be inquired about or proven by cross-examination." *State v. Sims*, 213 N.C. 590, 197 S.E. 176 (1938). So it comes to this: A defendant may not be asked on cross-examination for impeachment purposes if he has been accused, arrested or indicted for a particular crime, *State v. Williams, supra*, but he may be asked if he in fact committed the crime. *State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972); *State v. Gainey*, 280 N.C. 366, 185 S.E. 2d 874 (1972). Defendant's second assignment of error is overruled.

[3] Defendant's third assignment of error is addressed to the following excerpt from the charge: "Now, you may find that a witness is interested in the outcome of this trial. In deciding whether you will believe or disbelieve the testimony of any such witness, you may take his interest into account. If after doing so you believe his testimony in whole or in part, you should then treat what you believe the same as any other believable evidence in the case." Defendant argues that since the female prosecutor and the male defendant were the only important witnesses in the case, "this charge has the effect of making the jury scrutinize and hold the male defendant's testimony up to a higher standard to determine whether he was telling the truth. The use of the masculine pronoun 'his' could also have led the jury to believe that the judge was expressing his opinion that the testimony of the male defendant should be more carefully scrutinized than that of other witnesses." We now examine the charge in light of these contentions.

Immediately preceding the portion of the charge to which exception is taken, the judge instructed the jury as follows:

"Now, as the jurors in this case you are the sole judges of the credibility of the witnesses. You must decide for yourself whether you believe or disbelieve the testimony of any witness. You may believe all or any part or none of what a witness has had to say while on the stand.

In determining whether you will believe any witness, you should apply the same tests of truthfulness which you

apply in your everyday affairs. These tests may include the opportunity of the witness to see or hear or know or remember the facts or occurrences about which he has testified, or she has testified; the manner and appearance of the witness, any interest, bias or prejudice the witness may have displayed, the apparent understanding and fairness of the witness, and whether the testimony of the witness is reasonable and whether that testimony is consistent with other believable evidence in the case.

Now, you are likewise the sole judges of the weight to be given the evidence. If you believe that certain evidence is believable, you must then determine the importance of that evidence in the light of all other believable evidence in the case."

Three witnesses, two male and one female, testified in this case. When the charge is considered contextually it is perfectly apparent that the court used the term "his" to refer to all the witnesses who testified, both male and female. We think the jury so understood it. Isolated portions of a charge will not be held prejudicial when the charge as a whole is correct. *State v. Cook,* 263 N.C. 730, 140 S.E. 2d 305 (1965); *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334, *cert. denied* 377 U.S. 978, 12 L.Ed. 2d 747, 84 S.Ct. 1884 (1964). Merely showing that a critical examination of the judge's words, detached from the context and the incidents of the trial, are capable of an interpretation from which an expression of opinion may be inferred is insufficient to show prejudicial error. *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593 (1969); *State v. Jones,* 67 N.C. 285 (1872).

The charge complained of does not constitute an expression of opinion upon the credibility of defendant in violation of G.S. 1-180. The admonition to scrutinize included not only the defendant but also the testimony "of any witness." Instructions couched in substantially similar language are fully supported by our decisions. "There is no hard and fast form of expression, or consecrated formula, required, but the jury should be instructed that, as to the testimony of relatives or parties interested in the case and defendants, that the jury should scrutinize their testimony in the light of that fact; but if, after such scrutiny, the jury should believe that the witness has told the truth, they should give him as full credit as if he were disinterested." *State v. Green,* 187 N.C. 466, 122 S.E. 178 (1924).

*Accord, State v. Griffin,* 280 N.C. 142, 185 S.E. 2d 149 (1971) ;
*State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512 (1970) ; *State
v. Choplin,* 268 N.C. 461, 150 S.E. 2d 851 (1966) ; *State v.
Turner,* 253 N.C. 37, 116 S.E. 2d 194 (1960) ; *State v. McKin-
non,* 223 N.C. 160, 25 S.E. 2d 606 (1943). This assignment is
overruled.

[4]    Defendant's final assignment is based upon the following
excerpt from the charge: "The evidence of the State further
tended to show that before the defendant raped Phyllis McGill
she pretended to faint; . . ." Defendant contends the language
used amounted to an expression of opinion on the part of the
judge, in violation of G.S. 1-180, that defendant raped Mrs.
McGill.

The record discloses that the language complained of was
used by the judge while recapitulating the State's evidence. De-
fendant voiced no objection at that time. When the charge was
completed and as the jury retired to the jury room, the state-
ment was brought to the attention of the court and the jury
was recalled. The court thereupon instructed the jury as follows:

"Members of the jury, after you retired, or just as you
retired, I had a conference with the attorneys and it did
appear that in one place during the course of my instruc-
tions to you that I may have used a term which you could
misinterpret. During my restatement of the evidence, or
my summary of the evidence, I used at one point that the
evidence of the State tended to show that the defendant
had sexual relations with the State's witness, Phyllis Mc-
Gill, against her will. I also used the term 'and that before
the rape.' I did not in any way mean to indicate to you
that I felt that there was a rape in the case, but only that
the State's evidence tended to show that before the sexual
relation is against the will of the witness, Phyllis McGill,
then certain things happened, and I wanted to make sure
that you fully understood that I was not in any way
attempting to suggest to you that there was a rape, but
only that the State's evidence tended to show that there
was sexual relations against the will of the State's witness,
only if you believe the State's evidence would you so find."

If the portion of the charge challenged by this assignment
be, in fact, erroneous, which is not conceded, the final instruc-
tion given to the jury effectively cured the error. The jury

could not have been misled by any notion that use of the word "rape" by the judge indicated an expression on the judge's part that such fact had been established. In addition to the full and adequate curative instruction regarding the use of the word "rape," the jury was instructed elsewhere in the charge that "what the evidence does actually show is a question of fact for the jury's determination." When the charge is considered as a whole, we find it free from prejudicial error. There is no merit to this assignment.

Defendant has been accorded a fair trial. No prejudicial error having been shown, the verdict and judgment must be upheld.

No error.