STATE OF NORTH CAROLINA v. REGINALD GILMORE DRAKEFORD AND REGINALD SCOTT WATSON

No. 7826SC272

(Filed 1 August 1978)

**1. Criminal Law § 66.6— lineup—different color pants worn by defendant**

Even if the record supported defendant's contention that he wore brown pants in a lineup while other participants wore blue pants, such fact alone would not render the lineup procedure impermissibly suggestive.

**2. Criminal Law § 66.5— lineup—right to counsel—counsel on other side of one-way mirror**

Defendant was not denied the presence of counsel at a lineup by the fact that his attorney was on the other side of a one-way glass with other persons who viewed the lineup.

**3. Criminal Law § 66.12— in-court identification—viewing defendant at preliminary hearing after lineup**

A robbery victim's in-court identification of defendant was not tainted by the victim's viewing of defendant at his preliminary hearing where the preliminary hearing was held after a proper lineup in which the victim had identified defendant.

**4. Searches and Seizures § 43— seized evidence—waiver of constitutional objection—failure of record to show motion to suppress**

Defendants waived any right to challenge on constitutional grounds the admission of evidence seized during a search of one defendant's motel room where the record failed to show whether defendants moved to suppress the

State v. Drakeford

seized evidence pursuant to Art. 53 of G.S. Ch. 15A, and defendants' general objection to the admission of the seized evidence raised only the question of whether the evidence was relevant.

**5. Robbery § 4.6— participation in robbery—sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of armed robbery where it tended to show that defendant was riding in the back seat of a codefendant's car while in flight from the robbery scene; the codefendant was identified as a participant in the robbery; defendant's fingerprint was on a cigarette pack found in the getaway car; defendant fled on foot with other occupants of the car when it was stopped by the police; and a .22 caliber rifle was prepared for use in the robbery in a motel room registered in defendant's name.

**6. Criminal Law § 134.4— youthful offender—sentencing as adult—finding required**

The trial court erred in sentencing defendants who were under the age of 21 at the time of conviction as adult offenders without first finding that they would not benefit from supervision and treatment as "committed youthful offenders." G.S. 148-49.4.

APPEAL by defendants from *Friday, Judge.* Judgment entered for each defendant on 20 April 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 30 June 1978.

Each defendant was charged in a bill of indictment with armed robbery, and each defendant pled not guilty. At trial the State presented evidence tending to show the following:

Around 1:45 a.m. on 29 November 1976, a doorbell sounded in the office of the Bel-Air Motel on North Tryon Street in Charlotte, North Carolina. Jewel H. Robbins, owner and manager of the motel, admitted two black men, later identified as defendant Watson and Dennis Mathis. Mathis revealed a gun and ordered Robbins to give them her money, while defendant Watson went behind the desk and cut the wires of the silent burglar alarm. After Robbins gave Mathis and Watson money from the cash register as well as her billfold, she was tied face down on her bed with her hands behind her back. As the two men disappeared through the front door, Robbins freed herself, went outside, and began shooting at a Volkswagen leaving the premises.

Officer B. R. Pence of the Mecklenburg County Police Department, responding to the silent alarm which had been activated before the wires were severed, approached the motel and ob-

served a dark-colored Volkswagen with its lights off turn from the motel driveway and cross the median into the south-bound lane of Tryon Street. Officer Pence followed the vehicle and informed the dispatcher on his radio that he intended to stop a Volkswagen carrying three black males. He then directed his spotlight through the back window of the vehicle and turned on his blue light. When the vehicle failed to stop Officer Pence turned on his siren, called in for help, and pursued it at high speeds. At all times during the chase the police car stayed within two to three feet of the Volkswagen, and the spotlight shone on a black man, whom Pence later identified as defendant Drakeford, peering out of the rear window of the vehicle. The Volkwagen finally turned onto a field and stopped, and its passengers fled into the surrounding forest. Officer Pence was unable to apprehend any of the men after a short chase on foot. When he returned to the cars, other police officers had arrived on the scene. Several of the officers searched the Volkswagen and found a sawed-off .22 caliber rifle, a wallet and some papers belonging to defendant Watson, and an empty cigarette pack. Later a motel registration slip bearing defendant Drakeford's name was found in the back seat of the car. The Volkswagen was registered in defendant Watson's name.

At 9 a.m. on the same morning, Officer Pence and other police officers, acting on an informant's tip, went to the home of Watson's uncle. When an elderly man appeared at the door, Officer Pence asked if Watson was inside. The man replied that he had not seen Watson, but consented to a search of the premises. Watson was found hiding in a closet and was taken into custody.

Officer J. C. Trail of the Charlotte City Police Department received a radio dispatch at approximately 5:30 a.m. concerning a prowler and drove to a street situated one hundred to two hundred yards from the field where the Volkswagen had come to rest. When Officer Trail arrived at the house of the caller he noticed a black man standing on the porch. Trail approached the man and asked for identification. The man handed him a driver's license identifying him as Reginald Drakeford. Drakeford's clothes and shoes were wet and muddy. Later Drakeford's fingerprints were lifted from the cigarette pack found in the Volkswagen.

Officer J. F. Styron, investigating the robbery, went to the Days Inn Motel for the purpose of searching the room which was

registered under the name of defendant Drakeford. The room was registered from 10 a.m. on 28 November to 12 noon on 29 November 1976. A search of the room disclosed pieces of a barrel and stock sawed off of a .22 caliber rifle, a hacksaw, and a brown cap. The rifle pieces found in the room were later determined to match the sawed-off rifle found in the Volkswagen.

At a lineup conducted at 11 a.m. on 29 November defendant Watson was identified by Jewel Robbins as a participant in the robbery. Robbins was unable to identify defendant Drakeford.

Defendant Watson offered the testimony of Debra Denise Rudisill who stated that defendant Watson had picked her up at 10:30 p.m. on 28 November and escorted her to a bar; that when they arrived at the bar Dennis Mathis left in defendant Watson's Volkswagen assuring them that he would return at closing time to pick them up; that she and defendant Watson remained in the bar until it closed at 2:30 a.m.; that defendant Watson asked a friend to drive them home because Mathis had not returned with his car; and that she arrived at her house at 2:45 a.m. and did not see defendant Watson thereafter.

Defendant Drakeford offered no evidence.

The jury found each defendant guilty of armed robbery. From judgments imposing 50-70 years imprisonment for defendant Watson, and 40-60 years imprisonment for defendant Drakeford, the defendants appealed.

*Attorney General Edmisten, by Associate Attorney Norma S. Harrell, for the State.*

*Gene H. Kendall for the defendant appellants.*

HEDRICK, Judge.

[1] We first consider defendant Watson's separate assignment of error which challenges the admission of evidence identifying him as a participant in the robbery. On the morning of the robbery a lineup was conducted at which Jewel Robbins, the victim of the robbery, identified Watson as one of her assailants. Under this assignment Watson first contends that the lineup was impermissibly suggestive in that the defendant was required to wear brown pants while the other men in the lineup wore blue pants.

The record does not support the defendant's contention but discloses that all participants in the lineup were black males and were of approximately the same height and weight as Watson, and that all wore varying shades of blue pants. This procedure clearly comports with constitutional principles. 1 Stansbury's N.C. Evidence, § 57 (Brandis Rev. 1973). However, even if it were shown that the defendant's pants were of a different color, this fact alone would not render the lineup procedure impermissibly suggestive. *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972).

[2]   Watson also contends that he was denied presence of counsel at the lineup. The record reveals that while the defendant was fully advised of his rights prior to the lineup, he made no request to have counsel present at that time. Nevertheless, an attorney from the Public Defender's Office was contacted by the police, and was allowed to advise the defendant and view the lineup. The defendant bases his contention on the fact that the attorney "was on the side of the one-way glass with the individuals to view the lineup, while defendant Watson was on the back side of that glass and could see neither [his] attorney . . . nor Mrs. Robbins and/or such other individuals as may have viewed the lineup." The defendant's contention is patently absurd and merits no discussion.

[3]   Finally, under the same assignment the defendant contends that the in-court identification by Jewel Robbins was inadmissible because it was tainted from her seeing the defendant at his preliminary hearing at which Robbins appeared as a witness. The preliminary hearing was held after the lineup in which she had previously identified Watson. These contentions of the defendant Watson are totally without merit, and his assignment is overruled.

[4]   The remaining assignments of error are argued jointly in the defendants' brief. The defendants assign as error the admission of testimony regarding the search of Room 114 at the Days Inn Motel and the admission of the fruits of that search. The exceptions upon which these assignments are based refer to general objections by each defendant to admission of the evidence. The State contends that the defendants' failure to comply with the statutory procedure for challenging evidence obtained in an allegedly invalid search constitutes a waiver of objection to the evidence on that ground.

Article 53 of Chapter 15A of the North Carolina General Statutes, entitled "Motion to Suppress Evidence," prescribes "the exclusive method of challenging the admissibility of evidence" on constitutional or statutory grounds. G.S. 15A-979(d). General Statute 15A-975(a) requires a defendant to make his motion to suppress evidence prior to trial "unless the defendant did not have reasonable opportunity to make the motion before trial or unless a motion to suppress is allowed during trial under subsection (b) or (c)." The subsections referred to authorize a motion to suppress during trial "when the State has failed to notify the defendant's counsel or, if he has none, the defendant, sooner than 20 working days before trial, of its intention to use the evidence," and the evidence is of a specified nature; or when "additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before" the denial of his pretrial motion. The specific timing of the pretrial motion is provided in G.S. 15A-976, and the procedure for filing and hearing such motion is set forth in G.S. 15A-977.

Our Supreme Court recently held in *State v. Hill*, 294 N.C. 320, 240 S.E. 2d 794 (1978), that the failure to raise the question of the admissibility of evidence obtained in an allegedly unlawful search in a proper motion pursuant to the foregoing statutes constitutes a waiver by the defendant of his objection to the admission of the evidence. In *Hill* the trial court found as a fact that "the defendant had reasonable opportunity to move to suppress the evidence which is the subject of this motion" within the statutory time limit, 294 N.C. at 333-4, 240 S.E. 2d at 803; and, therefore, his failure to make a timely motion, was fatal to his objection to the evidence.

In the present case there is no such finding by the trial court. Furthermore, there is no indication in the record as to whether a motion to suppress was made at any time by the defendant. Thus, we are unable to determine whether the defendant presented his objection in a timely fashion and in suitable form. In our opinion, Article 53 of chapter 15A not only requires the defendant to raise his motion according to its mandate, but also places the burden on the defendant to demonstrate that he has done so. Since the record reflects only general objections to the admission of the evidence, the defendants have waived any right to challenge the evidence on constitutional grounds.

Thus, as the State contends, the only question raised by the defendants' general objections is whether the evidence is relevant. The search of Room 114 of the Days Inn Motel which was registered under defendant Drakeford's name yielded a hacksaw, a brown cap, and portions of a rifle barrel and stock which had been sawed off of a .22 caliber rifle and which, according to one witness, matched the sawed-off .22 caliber rifle found in defendant Watson's automobile. This evidence is unquestionably relevant in connecting the defendants to the crime committed. The defendants' assignment of error challenging the admission of this evidence is overruled.

[5] The defendants also assign as error the denial of their respective motions to dismiss at the close of the evidence. Defendant Drakeford argues that there is no evidence to support the verdict that he was a participant in the robbery. It is established that " 'when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty.' " *State v. Rankin*, 284 N.C. 219, 222, 200 S.E. 2d 182, 184 (1973). In order to support the defendant Drakeford's conviction the State's evidence must be sufficient to raise an inference

> that the defendant was present, actually or constructively, with the intent to aid the perpetrators in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrators. The communication or intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators.

*State v. Sanders*, 288 N.C. 285, 290-1, 218 S.E. 2d 352, 357 (1975). It is also settled that flight from the scene of the crime is competent evidence of the defendant's guilt. *State v. Jones*, 292 N.C. 513, 234 S.E. 2d 555 (1977); *State v. Rankin, supra.*

The evidence pertaining to defendant Drakeford, when viewed in the light favorable to the State, tends to show that Drakeford was riding in the back seat of Watson's Volkswagen while in flight from the motel; that his fingerprint was on a cigarette pack found in the getaway car; that he fled on foot with the other occupants of the car after they had stopped; and that a

.22 caliber rifle was prepared for use in the robbery in a motel room registered in his name. We think this evidence was sufficient to withstand Drakeford's motion for judgment as of nonsuit.

Defendant Watson's contention with respect to his motion for judgment as of nonsuit was predicated on his contention that his identification was inadmissible in evidence. In view of our rejection of this latter contention it is clear that the evidence favorable to the State is sufficient to submit the case to the jury and to support the verdict. The assignments based on the denial of the defendants' motions for judgment as of nonsuit are overruled.

[6]  Finally, both defendants assign as error the sentencing of the defendants as adults without a preliminary finding that they would not benefit from sentencing as youthful offenders. The State concedes that each defendant was under 21 years of age at the time of his conviction, and that the trial judge nevertheless sentenced them as adult offenders. The State argues, however, that the statutes in effect at the time of the defendants' convictions did not require the trial court to make a finding that a youthful offender would not benefit from treatment as such in order to sentence him as an adult offender. In doing so the State requests that we reconsider our decision in *State v. Mitchell*, 24 N.C. App. 484, 211 S.E. 2d 645 (1975), and the cases which followed. *See In re Tuttle*, 36 N.C. App. 222, 243 S.E. 2d 434 (1978); *State v. Matre*, 32 N.C. App. 309, 231 S.E. 2d 688 (1977); *State v. Worthington*, 27 N.C. App. 167, 218 S.E. 2d 233 (1975); *State v. Jones*, 26 N.C. App. 63, 214 S.E. 2d 779 (1975).

In *State v. Mitchell, supra,* Judge Clark, writing for this Court, discussed the applicable statutes, G.S. 148-49.1 through 148-49.9 (1974), providing special treatment for youthful offenders and quoted as follows from G.S. 148-49.4:

> If the court shall find that the youthful offender will not derive benefit from treatment and supervision pursuant to this Article, then the court may sentence the youthful offender under any other applicable penalty provision.

The court then held that the quoted portion of the statute

> expresses a clear legislative intent that a youthful offender receive the benefit of a sentence as a 'committed youthful of-

fender,' unless the trial judge shall find that he will not derive benefit from such sentence.

24 N.C. App. at 488, 211 S.E. 2d at 648.

We uphold our decisions in the cited cases. Furthermore, in our opinion the rewritten statutes regarding youthful offenders, G.S. 148-49.10 through 148-49.16 (1978) which explicitly require that the trial judge make a " 'no benefit' finding on the record" if he determines that the defendant "should not obtain the benefit of release under G.S. 148-49.15," merely clarify the legislative intent which this Court found manifest in *Mitchell. Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E. 2d 481 (1968). *See also State v. Niccum*, 293 N.C. 276, 238 S.E. 2d 141 (1977), in which the Supreme Court recognizes the requirement of the amended statutes but expresses no view of our decision in *State v. Mitchell, supra*. Thus, we hold that the trial court erred in sentencing the defendants as adult offenders without first finding that they would not benefit from the treatment provided youthful offenders in Chapter 148 of the General Statutes.

We find no error in the trials of defendants in which they were convicted of armed robbery. We remand the cases to the Superior Court for re-sentencing in accordance with this opinion.

No error in trial.

Remanded for re-sentencing.

Judges MORRIS and WEBB concur.