STATE OF NORTH CAROLINA v. NORMAN EUGENE SATTERFIELD

No. 113

(Filed 15 July 1980)

1. **Criminal Law § 55; Searches and Seizures §§ 4, 43— analysis of blood and saliva samples—failure to advise defendant of right to counsel—insufficient and untimely motion to suppress—no substantial violation of statutes**

The trial court did not err in the denial of defendant's general objection to testimony of the results of an expert's analysis of blood and saliva samples taken from defendant pursuant to a nontestimonial identification order because the record fails to show that defendant was advised of his right to counsel before being subjected to the tests as required by G.S. 15A-279(d) since (1) defendant's objection, treated as a motion to suppress, failed to allege a legal or factual basis for his contention that the blood and saliva samples were illegally taken as required by G.S. 15A-977(a), (c) and (e); (2) the motion to suppress should have been made before trial and was not timely made at trial; and (3) the nontestimonial identification order delivered to defendant three days prior to the withdrawal of the fluid samples advised defendant fully as to his right to counsel, and any failure to remind defendant of his right to counsel prior to the taking of the fluid samples would not likely constitute a "substantial" violation of G.S. 15A-279(d) requiring suppression of the evidence obtained.

2. **Criminal Law § 86.4— cross-examination of defendant about prior criminal charge—evidence first elicited by defense counsel**

While ordinarily it would have been improper for the district attorney to ask defendant on cross-examination whether he had been previously *charged* with assault with intent to rape, the trial court did not err in directing defendant to answer a question relating to the prior criminal charge where defendant's counsel, in his cross-examination of a police officer, was the first to elicit evidence that defendant had been previously charged with assault with intent to commit rape.

3. **Criminal Law § 88.2— meaningful cross-examination not prevented by court**

The trial court did not prevent meaningful cross-examination of the State's witnesses in sustaining objection to six questions asked by defense counsel on cross-examination where two of the questions contained erroneous statements of fact and were difficult to understand; three questions inquired into matters of tenuous relevance; and one question was unduly argumentative and repetitious.

4. **Criminal Law § 51— exclusion of expert testimony by barber—failure to qualify as expert**

The trial court properly excluded a question propounded by defendant calling for the expert opinion of a barber as to whether defendant's facial hair growth was fast or slow where the barber was never tendered or qualified as an expert in the field of facial hair growth.

**5. Criminal Law § 66.14— in-court identification—no taint from voice, photographic and lineup identifications**

   A rape victim's in-court identification of defendant as her assailant was of independent origin and not tainted by pretrial voice, photographic and lineup identifications where the victim testified that her in-court identification of defendant was based on seeing him in her apartment on the night of the assault, that a strong light from her bedroom shone into the kitchen where she was assaulted, and that she observed defendant the five to ten minutes he spent with her in the kitchen; the officers who conducted the various identification procedures never suggested to the victim whom she should pick, nor did the officers ever suggest that the person whose voice she had identified would be in the photographic showing or physical lineup; and none of the identification procedures was impermissibly suggestive and conducive to irreparably mistaken identification.

**6. Criminal Law § 66.6— lineup identification—viewing of one participant in isolation—no suggestiveness**

   A lineup was not impermissibly suggestive and conducive to irreparably mistaken identification so as to render inadmissible a rape victim's lineup identification of defendant because the victim, after identifying defendant, told officers that one of the black males in the lineup, defendant's brother, appeared to be very nervous, and officers had the victim confront this person in isolation, where the victim testified that viewing this male in isolation did not change her initial identification of defendant from the physical lineup. Furthermore, defendant had no standing to complain of a possible violation of his brother's constitutional rights.

**7. Criminal Law § 67— voice identification—failure to hold voir dire**

   The trial court did not err in admitting a rape victim's identification of defendant's voice from a number of tape recorded voices without a voir dire examination where defendant acquiesced in the trial court's decision not to hold a voir dire on the voice identification and failed to object to testimony concerning the victim's identification of defendant's voice, and where the record shows that the voice identification procedure was not conducted in an impermissibly suggestive manner.

   Justice BROCK did not participate in the consideration and decision of this case.

APPEAL by defendant from judgments of *Walker (Hal Hammer), J.*, 15 October 1979 Criminal Session, IREDELL Superior Court.

Defendant was tried upon indictments charging him with second degree rape and first degree burglary.

The State offered evidence tending to show, in pertinent part, that on 14 March 1979, Frances Jane Fletcher finished work at 10:45 p.m., picked up her children, and returned to her apart-

ment at 11:10 p.m. Mrs. Fletcher was married and lived in the apartment with her husband and children. She put one of her children in bed upstairs and sat down to watch television while waiting for her husband to return from work. A younger child stayed downstairs with her.

After speaking with a neighbor, Mrs. Fletcher noticed the kitchen door was ajar. The door lock was broken and the door would not stay closed. Mrs. Fletcher put a chair against the door in order to secure it. She then turned the kitchen lights off and returned to the living room to watch television. About fifteen minutes later she heard a "scooting" sound. Thinking her six-year-old sleeping upstairs had kicked a laundry bag off the foot of his bed, she went to check and saw the laundry bag was still on the bed. She then went to the kitchen to fix coffee and saw the kitchen door standing open and a black man standing in the doorway, a step or two inside the kitchen. The man pointed what appeared to be a weapon at Mrs. Fletcher, told her to be quiet and to do what he wanted if she wanted to live. He grabbed her by the throat, backed her into the wall, pressed the weapon into her side and then proceeded to rape her. After he finished he wiped the wall with a shirt to remove his fingerprints. The intruder then asked Mrs. Fletcher for money. She replied she had none and he left, saying he would be back the next night.

During this time the light in the kitchen was turned off, but Mrs. Fletcher testified there was sufficient light from a downstairs bedroom for her to see the assailant's face. Moreover, she had been pushed against the light switch on the wall and during the assault the kitchen light kept coming on for short periods of time. Mrs. Fletcher identified defendant as her assailant.

Evidence was also offered tending to show that semen stains on the victim's clothing came from someone with defendant's blood type.

Defendant testified that on the night in question he shot pool with his uncle until 10:30; that he stayed at his girl friend's house from 11 p.m. to 12 midnight; that from 12 midnight to 12:30 a.m. he spoke to a friend in front of his house; that he came home at 12:30 a.m. and stayed there the rest of the night. Defendant's testimony was corroborated by several witnesses.

The jury found defendant guilty as charged, and he was sentenced to life imprisonment for the second degree rape and twenty to thirty years for the first degree burglary, to run consecutively. Defendant appeals as of right to this Court.

*Rufus L. Edmisten, Attorney General, by Barry S. McNeill, Associate Attorney, for the State.*

*Albert F. Walser, attorney for defendant appellant.*

HUSKINS, Justice.

Defendant was served with a nontestimonial identification order on 30 March 1979 directing him to submit to procedures for collection of saliva, blood and pubic hair samples at the Iredell Memorial Hospital Emergency Room. The procedures were conducted on 2 April 1978, and the samples were personally delivered by an officer of the Statesville Police Department to David Hedgecock, a forensic serologist employed by the SBI, for analysis and comparison.

[1] At trial, defendant sought to suppress the results of Mr. Hedgecock's analysis by interposing a general objection to Hedgecock's testimony. This objection was overruled and Mr. Hedgecock was permitted to testify. Defendant contends the trial court erred in admitting this testimony without a showing of compliance with G.S. 15A-279(d), which requires that defendant be advised of his right to counsel before being subjected to any tests pursuant to a nontestimonial identification order issued under G.S. 15A-271, *et seq.* This contention is without merit. The record indicates that defendant failed to challenge the admissibility of the blood and saliva tests by a proper motion to suppress as required by G.S. 15A-971, *et seq.* Such failure constitutes a waiver of the objection that the blood and saliva samples were obtained in violation of a provision of Chapter 15A or the United States or North Carolina Constitutions. *State v. Hill*, 294 N.C. 320, 240 S.E. 2d 794 (1978); *State v. Drakeford*, 37 N.C. App. 340, 246 S.E. 2d 55 (1978).

A defendant who seeks to suppress evidence upon a ground specified in G.S. 15A-974 must comply with the procedural requirements outlined in G.S. 15A-971, *et seq. See* G.S. 15A-972 and 979(d). Moreover, such defendant has the burden of establishing

that his motion to suppress is timely and proper in form. *Accord,* *State v. Drakeford,* supra. Specifically, a motion to suppress made at trial, whether oral or written, should state the legal ground upon which it is made and should be accompanied by an affidavit containing facts supporting the motion. *Compare* G.S. 15A-977(e) *with* G.S. 15A-977(a). If the motion fails to allege a legal or factual basis for suppressing the evidence, it may be summarily dismissed by the trial judge. *Compare* G.S. 15A-977(e) *with* G.S. 15A-977(c).

In the instant case, defendant merely lodged a general objection to Mr. Hedgecock's testimony as to the results of tests conducted on defendant's blood and saliva samples. The objection did not say what specific statutory or constitutional provision had been violated by the State in obtaining the blood and saliva samples from defendant. Nor were any facts presented in support of defendant's general assertion that the State had failed to inform him of his rights prior to taking his blood and saliva samples. In sum, defendant's general objection fails to allege a legal or factual basis for his contention that the blood and saliva samples were illegally taken. It follows therefore that the trial judge had statutory authority to summarily deny defendant's objection. G.S. 15A-977(c).

In addition to being proper in form, the motion to suppress must be timely made. As a general rule, motions to suppress *must be made before trial.* G.S. 15A-975(a) and Official Commentary. A defendant may move to suppress evidence at trial only if he demonstrates that he did not have a reasonable opportunity to make the motion before trial; or that the State did not give him sufficient advance notice (twenty working days) of its intention to use certain types of evidence; or that additional facts have been discovered after a pretrial determination and denial of the motion which could not have been discovered with reasonable diligence before determination of the motion. G.S. 15A-975. In the instant case, defendant failed to bring himself within any of the exceptions to the general rule. Thus, defendant's objection at trial to the admissibility of the blood and saliva tests is without merit because the objection, treated as a motion to suppress, was not timely made.

Finally, we note that defendant's primary contention on this assignment is not that the State actually failed to advise him of

his right to counsel prior to withdrawing his blood and saliva but, rather, that the record fails to indicate whether defendant was advised of his rights immediately prior to having the fluid samples removed. However, the failure of the record in this respect is entirely attributable to defendant, who, as previously noted, bears the burden of presenting facts in support of his motion to suppress. In any event, the nontestimonial identification order personally delivered to defendant three days prior to the withdrawal of the fluid samples advised defendant fully as to his right to counsel. Given such advance notice, any failure to remind defendant of his right to counsel prior to the taking of the fluid samples would not likely constitute a "substantial" violation of G.S. 15A-279(d) requiring suppression of the evidence obtained. *See* G.S. 15A-974.

For the reasons stated, we hold that defendant's objection to Mr. Hedgecock's testimony was properly overruled. Defendant's first assignment has no merit.

[2] Defendant contends the trial court erred in allowing the district attorney to ask defendant on cross-examination whether he had been previously *charged* with assault with intent to commit rape. His second assignment rests on this contention.

Ordinarily, the challenged question would be improper. "A defendant may not be asked on cross-examination for impeachment purposes if he has been accused, arrested or indicted for a particular crime [citations omitted], but he may be asked if he in fact committed the crime." *State v. Poole*, 289 N.C. 47, 220 S.E. 2d 320 (1975). However, in the instant case, defendant's counsel, in his cross-examination of a police officer, was the first to elicit evidence that defendant had been previously charged with assault with intent to commit rape. Moreover, prior to being asked the question to which objection was made, defendant had testified on cross-examination, without objection, that he had once been accused of assault with intent to commit rape. The well established rule is that the benefit of an objection is lost when evidence of like import is admitted without objection. *State v. Little*, 278 N.C. 484, 180 S.E. 2d 17 (1971). This rule is especially applicable here where defendant, the objecting party, was responsible for introducing the subject of prior criminal *charges* in the first place. *See State v. Williams*, 255 N.C. 82, 120 S.E. 2d 442 (1961); 1

Stansbury, N.C. Evidence § 30 n. 59 at 81 (Brandis rev. 1973). Accordingly, the trial court did not err in instructing defendant to answer the question relating to a prior criminal charge made against him. Defendant's second assignment of error is overruled.

[3] Defendant contends the trial court prevented meaningful cross-examination of the State's witnesses on matters relevant to the defense. He asserts six instances in which the trial court improperly sustained objections to questions asked by defendant in his cross-examination of the State's witnesses. We have carefully examined these exceptions and find no prejudicial error. Two of the questions to which objection was sustained (Exceptions 5 and 11) contained erroneous statements of fact and were difficult to understand; three questions (Exceptions 3, 4 and 9), as phrased, inquired into matters of tenuous relevance; one question (Exception 10) was unduly argumentative and repetitious. Defendant made no attempt to rephrase these questions and make proper inquiry. We cannot say from an examination of this record that the trial judge abused his discretion or deprived defendant of a fair trial by the rulings here challenged. The wide latitude accorded the cross-examiner "does not mean that all decisions with respect to cross-examination may be made by the cross-examiner." 1 Stansbury, supra, § 35 at 108. Rather, the scope and duration of cross-examination rest largely in the discretion of the trial judge. *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978). "The judge has discretion to ban unduly repetitious and argumentative questioning, as well as inquiry into matters of only tenuous relevance." 1 Stansbury, supra, § 35 at 108. *Accord, State v. Abernathy, supra; State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977). Defendant's third assignment of error is overruled.

[4] Defendant contends the trial court erred in refusing to allow him to qualify a barber as an expert witness on the subject of facial hair and facial hair growth. For reasons which follow, we hold this contention has no merit.

When objection is made to a question calling for the expert opinion of a witness not previously tendered and qualified as an expert, "the party offering the expert should request a finding of his qualification; and if there is no such request, and no finding or admission that the witness is qualified, the exclusion of his testimony will not be reviewed on appeal." 1 Stansbury, *supra*,

§ 133 at 432. *Accord, Dickens v. Everhart*, 284 N.C. 95, 199 S.E. 2d 440 (1973); *Lumber Co. v. R.R.*, 151 N.C. 217, 65 S.E. 920 (1909). In the instant case, objection was made to a question propounded by defendant calling for the expert opinion of a barber who had not been tendered and qualified as an expert. Notwithstanding the State's objection, defendant did not tender the barber as an expert and failed to request that the witness be qualified as an expert in the field of facial hair growth. Accordingly, the trial court sustained objection to the barber's opinion as to whether defendant's facial hair growth was fast or slow. Since the barber was never qualified as an expert, the objection to his testimony was properly sustained.

In any event, the record is silent as to what the barber's opinion would have been had he been permitted to testify. Thus, it is impossible on appellate review to determine whether exclusion of this testimony was prejudicial error. "A showing of the essential content or substance of the witness's testimony is required before this Court can determine whether the error in excluding evidence is prejudicial." *Currence v. Hardin*, 296 N.C. 95, 249 S.E. 2d 387 (1978). Otherwise stated, "[w]hen evidence is excluded, the record must sufficiently show what the purport of the evidence would have been, or the propriety of the exclusion will not be reviewed on appeal." 1 Stansbury, *supra*, § 26 at 62. Defendant's fourth assignment of error is overruled.

[5] Defendant contends the trial court erred in failing to suppress the in-court identification of defendant by the victim.

Upon defendant's objection, the court conducted a voir dire in the absence of the jury at which the testimony of the victim and two police officers was taken. This testimony tends to show, in pertinent part, that on 20 March 1979, six days after commission of the offense, Officer Shawver visited the victim at her home, played a recording of six black male voices, and the victim picked out defendant's voice. The officer then spread out ten large color photographs of black males, and the victim picked out photographs of defendant and his brother. The officer took up these photographs without comment and spread out a second set of smaller photographs. The victim picked out a photograph of defendant. The photograph of defendant in the first photographic display was different from the one shown in the second display.

On 27 March 1979, the victim viewed a physical lineup of six black males of similar height and weight. The men wore identical green coveralls. The victim identified defendant as the man who had raped her. Defendant's brother was also in the physical lineup; however, the victim eliminated him from consideration.

The officers who conducted the various identification procedures never suggested to the victim who she should pick. Nor did the officers ever suggest that the person whose voice she had identified would be in the photographic showing or physical lineup. The victim testified that her in-court identification of defendant was based on seeing him in her apartment on the night of the assault; that a strong light from her bedroom shone into the kitchen where she was assaulted; that she observed defendant the five to ten minutes he spent with her in the kitchen.

Following the hearing the court made findings of fact and concluded, in pertinent part, "that there were no improper or illegal identification procedures or lineups involving this defendant; that the in-court identification made this day of defendant as the perpetrator is of independent origin, based solely on the prosecuting witness seeing the defendant at the time of the crime and does not result from any out-of-court confrontation or identification nor from any photograph or from any pretrial identification procedures which were suggestive or conducive in nature to a mistaken identification. . . ." Accordingly, the court held that the in-court identification of the victim "was made in accordance with the law, and [that] the legal and constitutional rights of defendant have been properly protected and afforded him."

Careful review of the record indicates that the findings of fact made by the trial court are supported by competent evidence and thus are conclusive on this Court. *State v. Gibbs*, 297 N.C. 410, 255 S.E. 2d 168 (1979). The findings of fact fully support the conclusion of law that none of defendant's constitutional rights were violated in the identification procedures and that the evidence was admissible.

[6] At the physical lineup on 27 March 1979, the victim noticed that one of the black males in the lineup, defendant's brother, appeared to be nervous and would not look her in the face. After identifying defendant as the perpetrator of the crime, the victim noted to police officers that one of the men in the lineup seemed

extremely nervous. The officers then asked the victim to confront this individual as he stood alone in the lineup. The victim complied with this request. The victim was not asked to make an identification on the basis of this confrontation. The victim testified that looking at this man in isolation did not change her prior identification of defendant as the perpetrator. Defendant argues that the confrontation was impermissibly suggestive and conducive to an irreparably mistaken identification. This contention is without merit. The confrontation took place after the victim had positively identified defendant from a lineup of six black males. Moreover, the victim testified that viewing this male in isolation did not change her initial identification of defendant from the physical lineup. In any event, defendant has no standing to complain of a possible violation of his brother's constitutional rights.

[7] Defendant argues that the court erred in admitting, without a voir dire examination, testimony concerning the victim's identification of defendant's voice from a number of tape recorded voices played to her by police officers. Defendant, however, acquiesced in the trial court's decision not to hold a voir dire on the voice identification and failed to lodge objection to testimony concerning the victim's identification of defendant's recorded voice. In any event, review of the record indicates that the voice identification procedure was not conducted in an impermissibly suggestive manner. Under these circumstances, a voir dire examination was not necessary, especially since defendant filed no objection and did not request a further voir dire with respect to the state's references to the voice identification. *See State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975).

We note finally that any discrepancies or inconsistencies in Mrs. Fletcher's identification of defendant went to the weight rather than the competency of her testimony and is thus a matter for the jury. *State v. Gibbs*, supra; *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972). Defendant's fifth assignment is overruled.

After careful review, we find no prejudicial error in the trial. The verdicts and judgments must therefore be upheld.

No error.

Justice BROCK did not participate in the consideration and decision of this case.