850 F.2d 690
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Norman Eugene SATTERFIELD, Petitioner-Appellant,
v.
Harry L. ALLSBROOK; Attorney General of the State of North
Carolina, Respondents-Appellees.
 No. 87-6588.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 6, 1988.
Decided: June 22, 1988.
 
 Steven H. Goldblatt, Director, Mark A. Vargo, Student Counsel (Ellen Pearlman, Dori K. Bernstein, Supervising Attorneys; M. Kathryn Schafer, Student Counsel; Appellate Litigation Program, Georgetown University Law Center, on brief), for appellant.
 Barry S. McNeill, Assistant Attorney General (Lacy H. Thornburg, Attorney General, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and MURNAGHAN, Circuit Judges, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Here we have a denial of a petition for a writ of habeas corpus. The United States District Court for the Western District of North Carolina (McMillan, J.) held that Norman Eugene Satterfield was not denied a fair trial by cross-examination concerning whether he previously had been charged with an assault with intent to rape.
 
 
 2
 On October 17, 1979, in the Superior Court of Iredell County, North Carolina, Satterfield was convicted by a jury on charges of first-degree burglary and second-degree rape. The conviction was affirmed on appeal. State v. Satterfield, 300 N.C. 621, 268 S.E.2d 510 (1980). Satterfield filed a motion for appropriate relief in the Iredell County Superior Court on May 17, 1983. The court dismissed the motion on May 20, 1983. On April 10, 1986, he petitioned for a writ of certiorari to the Supreme Court of North Carolina. On August 12, 1986, the Supreme Court denied the petition.
 
 
 3
 On May 24, 1984, Satterfield filed a petition for a writ of habeas corpus in the United States District Court. The petition was amended on June 15, 1987. On August 6, 1987, the district court denied the petition.
 
 
 4
 The evidence concerning a 1978 charge of assault with intent to commit rape was initially admitted during the defendant's cross-examination of Detective Shawver. Satterfield's counsel asked Shawver about the photographs of Satterfield that were displayed to the victim:
 
 
 5
 Q: I ask you, now, are you familiar personally with this picture here, which I believe you said was taken in August of 1978?
 
 
 6
 A: Yes, sir, this picture was taken at the time Mr. Satterfield was picked up and charged with the crime of assault with intent to commit rape in August of 1978.
 
 
 7
 Q: In August of 1978?
 
 
 8
 A: Yes, sir.
 
 
 9
 Defense counsel went on to elicit from Shawver that the photographs of Satterfield revealed some degree of facial hair. He did not object to or move to have stricken Detective Shawver's "blurt," his reference to Satterfield having been charged with assault with intent to commit rape in August of 1978. It has nowhere been suggested that the "blurt" was coached or rehearsed by the prosecution.
 
 
 10
 Satterfield later took the witness stand and testified in his own defense. When his counsel inquired why Satterfield had willingly cooperated with the police's investigation, Satterfield alluded to the previous assault with intent to commit rape accusation:
 
 
 11
 Q: Did you indicate a willingness to cooperate with the police?
 
 
 12
 A: Yes, I did.
 
 
 13
 Q: Why did you do that?
 
 
 14
 A: Because I was accused once before for something I didn't do. They said on the record I was accused, and I just wanted my name cleared, because I never committed any kind of crime before in my life.
 
 
 15
 The Assistant District Attorney in his cross-examination of Satterfield elicited the following testimony:
 
 
 16
 Q: You say you were accused once before of something you didn't do?
 
 
 17
 A: Yes, sir.
 
 
 18
 Q: What was that?
 
 
 19
 A: Assault on a girl named Gloria Thompson.
 
 
 20
 Q: Assault on a girl named Gloria Thompson from Harmony, for what?
 
 
 21
 A: I don't know. I don't know a girl named Gloria Thompson from Harmony. She said I grabbed her and attempted to rape her. I was accused, and my mother cried and told me to plead guilty of assault on a female and they'd put me on probation instead of taking the time they were going to give me; but I didn't plead.
 
 
 22
 Q: You say you didn't plead?
 
 
 23
 A: My mom did--she did.
 
 
 24
 Q: Your mom plead [sic] you guilty?
 
 
 25
 A: Right. She can verify that. I'm not going to plead guilty to something I didn't do. My mom plead [sic] guilty.
 
 
 26
 Q: This offense that you were talking about that you say your mother plead [sic] guilty to, was that in this Court back in October of 1978?
 
 
 27
 A: Yes, sir.
 
 
 28
 Q: Is that the case in which you were charged with assault with intent to--
 
 
 29
 MR. WALSER: Objection to what he was charged with, Your Honor.
 
 
 30
 COURT: Over-ruled. Go ahead and finish.
 
 
 31
 Q: That was the case in which you were charged with assault with intent to commit rape?
 
 
 32
 A: Yes, sir.
 
 
 33
 Q: And you entered a plea of guilty to assault on a female?
 
 
 34
 A: That were [sic] the plea, but I didn't plead.
 
 
 35
 Q: You didn't plead to it?
 
 
 36
 A: No, I didn't.
 
 
 37
 Q: You were the one being tried?
 
 
 38
 A: I was the one being tried.
 
 
 39
 Q: As a matter of fact, you [sic] went so far as to select a Jury, didn't they?
 
 
 40
 A: Yes, they did.
 
 
 41
 Q: You were represented by a lawyer, werent' [sic] you?
 
 
 42
 A: Yes, I was.
 
 
 43
 Q: Mr. Allan Eisele, is that right?
 
 
 44
 A: That's right.
 
 
 45
 Q: And you entered a plea of guilty to assault on a female?
 
 
 46
 A: Yes, sir.
 
 
 47
 Q: And you were sentence [sic] to a minimum of one year and a maximum of one year, is that right?
 
 
 48
 A: Yes, sir.
 
 
 49
 Q: And that was suspended?
 
 
 50
 A: Yes, sir.
 
 
 51
 Q: For two years?
 
 
 52
 A: Yes, sir.
 
 
 53
 Q: And you were placed on supervised probation?
 
 
 54
 A: Right.
 
 
 55
 Q: And ordered to pay a fine and the costs of Court?
 
 
 56
 A: Yes, sir.
 
 
 57
 Q: And ordered not to be convicted of any similar crime during the probation period?
 
 
 58
 A: Right, and I wasn't.
 
 
 59
 Q: And ordered not to enter on the premises or contact the person of Gloria Thompson without her express written consent, is that right?
 
 
 60
 A: Right.
 
 
 61
 Q: And Gloria Thompson was a black female, is that right?
 
 
 62
 A: Yes, she was.
 
 
 63
 Q: You don't know her, you say?
 
 
 64
 A: I don't know her.
 
 
 65
 Q: But you plead [sic] guilty to the offense?
 
 
 66
 A: I plead [sic] guilty.
 
 
 67
 The Assistant District Attorney then proceeded to cross-examine Satterfield about his other past convictions for traffic violations.
 
 
 68
 The prosecutor asked Satterfield on cross-examination whether he previously had been charged with assault with intent to commit rape. Satterfield argues that he was unfairly prejudiced by the cross-examination. The government, on the other hand, argues that because testimony of like import was elicited during the cross-examination of one of the State's witnesses, as well as during Satterfield's own testimony, the questioning about the charge of assault with intent to commit rape was not prejudicial.
 
 
 69
 It is not disputed by either party that, because Satterfield testified in his own behalf, he became subject to cross-examination by the district attorney concerning any prior inconsistent statements, prior convictions, and any other specific acts of misconduct that tended to impeach his character. State v. Herbin, 298 N.C. 441, 450, 259 S.E.2d 263, 269 (1979). However, the district attorney could not ask about or refer in his question to prior arrests, indictments, charges or accusations not leading to conviction. Id. at 450-51, 259 S.E.2d at 270 (the trial judge properly sustained defense counsel's objection to the district attorney's reference in one question to "this charge of rape").
 
 
 70
 As the North Carolina Supreme Court noted on direct appeal, the challenged question in the instant case was improper. See State v. Satterfield, 300 N.C. 621, 626, 268 S.E.2d 510, 514 (1980). However, that does not necessarily mean that Satterfield's constitutional right to a fair trial was denied. The questions the Court must address are 1) whether the defense counsel was the "first to elicit evidence" of Satterfield's prior criminal charge and thereby opened the door to subsequent questions, and 2) whether the prejudicial effect of the cross-examination was grave enough to raise a constitutional question despite Detective Shawver's testimony and the defense counsel's failure to object as well as the defendant's own testimony that he was once accused by Gloria Thompson of grabbing her and attempting to rape her.
 
 
 71
 We do not rely on the argument that Satterfield's testimony opened the door to questions regarding his prior charge. Although Satterfield did say that "I was accused once before for something I didn't do," that testimony could easily have been impeached by presenting Satterfield's prior conviction and his guilty plea concerning the crime of assault alone. Instead, the prosecutor went beyond rebutting the evidence introduced on direct examination, and introduced evidence that the State had brought a formal charge of attempted rape (later abandoned) against Satterfield in the earlier, unrelated proceeding.
 
 
 72
 We then turn to consideration of the North Carolina rule that the benefit of an objection is lost when evidence of like import is admitted without objection. See State v. Satterfield, 300 N.C. 621, 626, 268 S.E.2d 510, 515 (1980). The North Carolina Supreme Court's holding suggests that the defense counsel's failure to object during the cross-examination of Detective Shawver to his blurt was a procedural default resulting in a waiver the second time the improper information was introduced. We may assume that the situation was not one appropriate for application of the concept of "waiver." The proper question is not whether there was a waiver but whether Satterfield's cross-examination was sufficiently prejudicial to warrant a reversal despite the fact that the same information already had been introduced without a contemporaneous objection by the defense counsel. See Darden v. Wainwright, 477 U.S. 168, 182 (1986) (idea of invited response is used not to excuse improper prosecutorial comments, but to determine their effect on trial as a whole).
 
 
 73
 Despite the fact that the like information already had been introduced through Shawver's blurt, we proceed on the assumption that the challenged cross-examination was sufficiently prejudicial to raise a constitutional question. In the instant case, the defendant was charged with rape. In the previous case, the defendant had been charged with assault with intent to rape and convicted only of assault. There is possibly a sufficient similarity between the two charges to prejudice the jury unfairly. When the defendant's previous charge was introduced for the first time during trial, the focus of the testimony was on the photograph and the defendant's facial hair. The focus during the challenged question was on the defendant's previous charge and the ensuing guilty plea. Therefore, the prejudicial impact was arguably much greater the second time around.
 
 
 74
 However, in the instant case, the State's proper evidence overall against Satterfield was strong and compelling. The victim testified that there was sufficient light in the kitchen to see her assailant. She identified the defendant from two separate photo line-ups. She also identified Satterfield at a physical line-up. Moreover, she positively identified him by his voice exemplar. The victim testified that she noticed red paint on her assailant's hand and on his dark blue work pants. When Satterfield initially was interviewed by the police on the day after the rape, he was wearing blue work pants splattered with red paint and had red paint on his hands. The forensic serologist's test showed that the semen came from a man who was either a group AB or group B secretor. Satterfield has group B secretor blood. In addition, the defendant had made inconsistent statements to investigating officers with regard to his whereabouts on the night of the rape. The evidence against the defendant, therefore, was strong to the point of being overwhelming.
 
 
 75
 In sum, even though the questions with regard to the defendant's previous charge may well have been improper and potentially prejudicial, the error was harmless. See Chapman v. California, 386 U.S. 18, 24 (1967).
 
 
 76
 AFFIRMED.